## The City of Detroit v. The Board of Public Works and others.

*Equity jurisdiction : Quo warranto : Municipal corporations and officers.* The question between contending claimants to the rights and powers of a municipal office, and the question between municipal corporations, each claiming to be invested with authority over the same subject, and each denying the lawful existence of the other, are not questions of equitable cognizance,—the statute having provided a specific and adequate remedy at law by an information in the nature of a *quo warranto.*

*Heard October 17, 18, 19.  Decided October 31.*

Appeal in Chancery from Wayne Circuit.

The common council of the city of Detroit filed their bill in the circuit court for the county of Wayne, in chancery, against the Board of Public Works of the city of Detroit, Henry H. LeRoy, William Purcell, Deodatus C. Whitwood and Julius Stoll, to determine the validity of the act of the legislature, under which the corporation defendant derived its powers, and the individual defendants their offices as members of the board.  The defendants having demurred to the bill, the cause was heard upon the demurrer, which was overruled and a final decree entered thereon, adjudging the act of the legislature, so far as it purports to create a board of public works, unconstitutional and void; and perpetually restraining the defendants from the exercise of any of the functions sought to be conferred upon them by the act.  The defendants appeal to this court.

*J. P. Whittemore, Theo. Romeyn* and *Lyman Cochrane* for complainant.

*Samuel T. Douglass, Geo. V. N. Lothrop,* and *J. Logan Chipman,* for defendants.

CHRISTIANCY, J.

The legislature óf 1871 passed an act entitled " An act to establish a board of public works in and for the city of Detroit," which was approved April 18, 1871, and, by the last section, was declared to take effect on the first Monday in August, 1871 (though some of its enactments by their terms were not to go into operation till the first day of January, 1872).

This act (among other provisions) enacts:

SECTION 1. *The People of the State of Michigan enact,* That there shall be constituted for the city of Detroit a board of public works, composed of four persons, who shall be freeholders and qualified electors of said city, taken ·in ·equal numbers from the two political parties represented in the common council. The first board shall consist of Henry H. LeRoy, William Purcell, Deodatus C. Whitwood, ánd Julius Stoll, and all subsequent boards and members thereof shall be appointed by the common council of said city. The members of said board shall give bonds in the sum of fifty thousand dollars each, with sureties, to be approved by the common council of the city of Detroit.

SEC. 2. The said board shall, within one week after this act shall take effect, meet in the office of the city clerk of said city and take the oath of office prescribed for other city officers, and shall proceed by lot to determine their term of office respectively, one to serve for the term of two years, one for the term of four years, one for the term of six years, and one for the term of eight years.

SEC. 3. All vacancies in said board, whether by expiration of term of service or otherwise, shall be filled by the common council of said city by the vote of a majority of all the aldermen elect, and whenever such vacancy is filled, the person so elected shall be of the same political party as

his predecessor; and no person shall be eligible to hold a seat in said board who is not a freeholder in said city, and a qualified elector; all vacancies in said board, except by expiration of term of appointment, shall be promptly reported by said board to the common council of said city, specifying the length of the unexpired term in which the vacancy has occurred.

SEC. 4. These and their successors in office shall be known by the name and style of " The Board of Public Works of the City of Detroit," and by that name shall have power to contract, sue and be sued, to purchase, hold and convey such personal and real estate as may be necessary to the convenience and needs of said city, to have a common seal, to alter and change the same at pleasure, to make by-laws and rules, and do all legal acts, which may be necessary and proper to carry into effect the intent and objects of this act.

SEC. 5. The said board of public works is hereby endowed with the powers, functions, duties and responsibilities, and vested with the property, books, records, papers and effects, which have heretofore been exercised and enjoyed by the board of water commissioners of said city of Detroit, the board of sewer commissioners, the commissioners of " grades " and " plans " of the city, and shall also have charge and control of the erection and construction of engine-houses, city hall, and all other public buildings (except school-houses), public sewers, drains, water-works, hydrants, pipes and reservoirs in said city; and it is hereby made the duty of the said several boards of commissioners herein referred to, to transfer to the board of public works of the city of Detroit, created by this act, all the books, papers, maps, records, moneys, assets and property belonging to the said boards of commissioners respectively; and the said board shall also have charge and control of the

streets, parks and public grounds of said city, and may, by printed rules and orders, regulate the use of the same, and provide for planting ornamental trees therein : *Provided*, That nothing herein shall be construed to authorize said board to devote any more of a public street to ornamental trees than such as is not required or used for road and sidewalk purposes.

The remaining sections of the act were mainly calculated to carry into effect those already mentioned; and in several particulars powers previously exercised by the common council were transferred to this board of public works.

On the 29th day of July, 1871, some days before this act went into effect, a bill was filed in the circuit court for the county of Wayne, in chancery, in the name, and purporting to be on behalf, of the city of Detroit, against the board thus (to be) created, or rather, against the commissioners of that board whose names are mentioned in the act; setting forth, among various irrelevant and immaterial and some wholly impertinent matters, that the city of Detroit had been for a long time an incorporated city; that the common council of said city had the supervision and control, in varying degrees, of the several boards charged with distinct functions, viz: the board of water commissioners, the board of sewer commissioners, the board of commissioners upon the plan of the city, and the board of the commissioners of grades; that the legislature, at its last session, attempted to pass an act (meaning the act above referred to) changing materially and radically the municipal organization of the city, and purporting to transfer the most important functions of the government to the said commissioners or board attempted to be created by the act, and to place in their hands the arbitrary and unchecked control, to a great extent, of the business and finances of the city; that no notice, previous to the meet-

ing of the legislature, was given of any intention to apply for a change in the city charter; that the bill (which by its passage became the act in question) was presented with the names of the commissioners in blank, and that the only election or appointment of said commissioners was by merely filling the blanks in said bill by the vote of each house in the course of its passage; that complainant is advised, and verily believes and charges, that the act is illegal, invalid and unconstitutional for several reasons which the bill proceeds to give, but which at present it is unnecessary to notice.

The bill sets forth what it claims to be the effect of several provisions of the act, taking powers from the common council and the various boards and commissioners, and vesting them in this board; that such powers are fraught with danger to the interests of the city; that the carrying of the act into effect would radically revolutionize the administration of the affairs of the city; and if the act should be adjudged unconstitutional, after the transfer of the papers, business and large interests which the act requires to be transferred, that great confusion, embarrassment and loss must ensue, and that it will lead to incalculable trouble and litigation, wherefore they come into a court of equity to test the validity of the act in the simplest and readiest manner; that said commissioners of the board (naming them) claim to be lawfully appointed, and complainant is informed that they intend to organize under the act and to enforce their asserted rights under it.

The prayer is that the defendant may answer the bill, and that the act may be declared unconstitutional and void, and that they may be enjoined from exercising or assuming to exercise any of the powers, authority, jurisdiction or functions intended by the act to be conferred; and that in the mean time a temporary injunction may be issued with the like effect

until the further order of the court; and for general relief. The temporary injunction was granted on the fifth day of August.

The defendants demurred to this bill on the ground,— *First*, that the court had no jurisdiction of the subject-matter of the bill; *second*, that if it had, the city of Detroit cannot maintain such a bill, if the same could be maintained by any body; and *third*, for want of equity generally.

The demurrer being overruled and a final decree made in accordance with the prayer of the bill, the case is brought to this court on appeal. The defendants in this bill, the members of this new board of public works, having, since the act took effect, qualified under it, the various officers of the old board, whose powers and functions were transferred, have in the mean time continued to hold over and to act officially as before, and for the purpose of testing fully the question of the validity of the act, three informations in the nature of a *quo warranto* have been filed in this court by the attorney-general upon the relation of this board of public works, one against the board of water commissioners, one against the board of sewer commissioners and one against Chauncey S. Hurlbut, one member of the board of water commissioners. All these cases are now at issue in this court. All these cases and the chancery appeal have been argued together. We will first dispose of the bill in equity; and the first question arising upon it is, whether that bill can be maintained, and whether the constitutional validity of the law and the right of the defendants to their offices as members of the board of public works can be properly adjudicated under this bill.

It is quite manifest that if the act of the legislature is valid, the defendants were entitled to their offices and had a right to enter upon their official duties upon complying with the conditions mentioned in the act; and there could,

therefore, be no ground upon which the bill could be sustained.

If the act be void, as a violation of the constitution, they are not thus entitled, and the officers of the old boards, sought to be discontinued by the act, would still continue in office.

The whole controversy, therefore, is involved in the single question, whether the defendants are entitled to the offices they claim, as against the officers of the old boards sought to be discontinued. This is a question for which the statute has provided a specific and adequate remedy at law, by an information in the nature of a *quo warranto*, which might be instituted upon the relation of the officers claiming to constitute the new board of public works, against the officers of the old boards holding over; or, if the officers of the new board had entered upon the duties of their offices, then on the relation of any of the officers of the old boards, to determine by what right either claims to hold such offices. And, as the same act which creates this board also makes them a corporation (see § *4*), all their acts would be corporate acts (if the statute be valid), a like proceeeding in the nature of *quo warranto*, upon leave granted, would lie, calling upon the defendants (the new board) to show by what right they claim to exercise corporate powers (see *Comp. L.*, §§ *5302 to 5315*); and in this proceeding, doubtless the common council of the city might itself become the relator. And in any of these proceedings by *quo warranto*, the question in controversy would be the same as that sought to be litigated under the present bill,—the constitutionality of the act and the rights of the different officers to the offices they claim the right to hold. And it does not alter the case that there is also a question whether there are such offices to be filled, or whether there is such a corpora-

tion, as all this is involved in the question whether they are entitled to hold such offices, or to exercise such corporate powers.

It is, therefore, quite clear that there is nothing in the nature of the controversy itself, or question to be tried, which makes it one of equitable cognizance, there being a complete remedy at law for the trial of the right of the respective contestants to the offices in question.

The complainant has cited no authority, and we are aware of none, showing that a court of equity has the right, on account of any incidental circumstances or consequences connected with, or growing out of, the controversy, to assume the jurisdiction to try the merits of the controversy itself; and we think courts of equity have no such power. —*Tappan v. Gray, 7 Hill, 259, S. C., 9 Paige, 507 ; People v. Draper, 24 Barb., 265 ; Markle v. Wright, 13 Ind., 548; Beal v. Ray, 17 Ind., 554 ; Cochran v. McCleary, 22 Iowa, 75, 78 ; Updegraff v. Crans, 47 Penn. St., 103.*

But it is insisted that, even if the contest between the officers of the old boards and those of the new, could not be tried directly between themselves in a court of equity, yet the city has the right to insist upon its trial in this way; that the city,—being the entire corporation, only a portion of whose rights or powers or property is parceled out to, and held by, the several old boards, or would be held by the new board, neither representing the entire mass of corporate rights or powers,—has an interest above and paramount to, as well as separate from, that of any of the several boards, in the property and franchises of the city, and an interest that all the duties of the officers of the several boards shall be performed by the persons legally authorized to fill the offices.    This is the view upon which the counsel for the city seek to sustain the bill.    But, if this view

be correct, it proceeds upon the ground that the city, not being one of the *immediate parties* to the controversy to be tried, but a *third* party seeking *to intervene,* in a controversy between other parties purely legal in its character, has a right to compel the immediate parties to try this legal controversy between themselves, in a court of equity where neither of those parties could, and neither might be willing to, try it; and this, too, *without showing any reason whatever,* for forcing this mode of trial upon them; for certainly no good reason is shown for any thing more than an appeal, by a proper bill, to the ancillary jurisdiction of the court, showing either a pending litigation at law between the respective claimants (the old and new boards) for the offices in question, or asking that they might be compelled to proceed at law for the trial of their rights to such offices, and asking the aid of the court for the preservation of the property and rights of the city, by injunction to prevent any disturbance of the rights of the city, *pending the litigation* of the principal controversy between the immediate parties at law.     Whether such a bill could be sustained, we need not inquire.

The present bill is not of this character. It asks a trial of the whole controversy in the court of chancery,—a trial which shall finally determine the controversy,—and for a perpetual injunction, as the result of that trial; and the preliminary injunction is granted as an incident of this supposed right of disposing of the whole controversy under this bill.

The question of the constitutionality of the law does not, therefore, arise on this chancery appeal.     I think the court of chancery had no jurisdiction to grant the relief, or any part of the relief, asked by the bill; that the decree should, therefore, be reversed and the bill dismissed, with

costs, to the defendants, LeRoy, Purcell, Whitwood and Stoll.

GRAVES, J., concurred.

CAMPBELL, CH. J.

I think that, inasmuch as, on the theory of the bill, this is not a contest for the incumbency of existing offices, but a threatened invasion of rights under color of a law claimed to be void, it does not differ in principle from the large class of cases of which *United States Bank v. Osborn* is an example.   But as the main question is not intended to be decided at this time, and as my brethren are all agreed on this point, I do not deem it advisable to enter into any discussion of this subject, but simply to indicate my position on the question of jurisdiction.   I give no opinion, therefore, as to what decree should be entered.

COOLEY, J.

If I understand it, the bill in this case, if sustained, will enable the complainant to accomplish two objects:

1.  To try in equity the right of the defendants to a public office:

2.  To keep parties who are now in performance of most of the functions of that office in undisturbed possession thereof, and to exclude the adverse claimants, pending the litigation.

These are the ends which are to be secured by the bill; the first being its main purpose, and the second being accomplished by the injunction.

It is not claimed by complainant that the court of chancery is primarily the proper tribunal in which to seek an adjudication upon the right to a public office.   Some

ground aside from the main controversy must, therefore, appear, to give equitable jurisdiction. That ground is supposed to exist in the irremediable mischief that would follow from persons wrongfully intruding into an office of high importance, involving the care of large public interests, with which the city and its inhabitants are largely and constantly concerned.

The mischiefs, such as they are, are to flow from the assumption of official functions by parties not entitled. They will flow just as surely from the present incumbents remaining in without right, as by the defendants taking possession without right. For, either the incumbents are claiming offices which have been abolished by law, or the defendants are asserting a right to an office which the law has never created; and one set of the claimants, if they shall perform the official functions, can no more be regarded as officers *de facto* for the public protection than their contestants could. Assuming, then, that the supposed mischiefs will be irremediable, the case will stand thus: The bill is a bill to prevent irremediable mischiefs if defendants are not entitled, and to cause irremediable mischiefs if they are. Unless, therefore, the contest can safely be prejudged on the application for a preliminary injunction, the equitable jurisdiction would appear to rest upon a very unsatisfactory foundation.

That it cannot be thus prejudged, and that the law has made no adequate provision for obtaining even the injunction master's best judgment upon it, is too apparent to need elucidation. I suppose we may also assume that in the generality of such controversies the respondent party is as often found to be in the right as his adversary. To sustain this bill, therefore, we must hold that equity may take cognizance of a controversy where the ground of inter-

ference is, not the question involved, but some anticipated injurious result, which is just as likely to be caused by the interference as prevented by it. Such holding, I think, would be without reason, and, so far as I am advised, it would be without precedent.