## GILDEMEISTER v. LINDSAY.

1. APPEAL AND ERROR—MOOT QUESTIONS.

Where, on appeal from the decree of the court below dismissing plaintiff's bill for an injunction to restrain defendants, composing the city election commission of the city of Detroit, from certifying the returns of the election whereby the electors of said city approved Act No. 369, Pub. Acts 1919, affecting the municipal courts of record, it appears that after dismissal of the bill defendants had made the certification sought to be restrained, and the judges provided for in said act had been appointed and were exercising the functions and performing the duties of the office in question, and that the questions involved are therefore moot questions, this court will decline to consider them.

2. Quo Warranto—Title to Office.

In this State *quo warranto* is the only way to try title to office, finally and conclusively.

3. Same—Statutes—Constitutionality—Right to Hold Public Office.

*Quo warranto* is the proper proceeding to test the constitutionality of an act of the legislature providing for the appointment of judges of the recorder's court of the city of Detroit, on approval of said act (Act No. 369, Pub. Acts 1919) by the electors of said city, since the right of said judges to hold office is also involved; and a bill to try said questions was properly dismissed.

4. Courts—Evidence—Judicial Notice—De Facto Court.

This court might properly take judicial notice of the fact that the court sought to be reached in this suit is a *de facto* court.

5. Same—De Facto Court—Definition.

A *de facto* court is one established and exercising its judicial functions under authority of a statute apparently valid, though such statute may be in fact unconstitutional, and may be afterwards so adjudged.

Appeal from Wayne; Dingeman (Harry J.), J. Submitted October 20, 1920. (Docket No. 77.) Decided December 21, 1920.

Bill by Charles B. Gildemeister against Richard Lindsay and others, composing the city election commission of the city of Detroit, to enjoin the certification of certain election returns. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Lazarus S. Davidow,* for plaintiff.

*Clarence E. Wilcox,* Corporation Counsel, for defendants.

*Edward S. Grece* and *M. F. McDonald, amici curiæ.*

STONE, J. At the election held in the city of Detroit on April 5, 1920, Act No. 369 of the Public Acts

of Michigan for 1919 was approved by the electors of the city. The act is entitled as follows:

"An act to supplement existing laws providing for the establishment and maintenance of municipal courts of record, and defining the jurisdiction of such courts; to fix the number of judges thereof; to provide a presiding judge; to define the privileges of such presiding judge; to modify the procedure in and extend the jurisdiction of said courts in certain respects, and to provide for the abolishing of any police courts or other courts not of record having exclusive criminal jurisdiction existing in any city, in which the provisions of this act become operative."

The bill of complaint herein was filed by the plaintiff, who is a resident taxpayer of Detroit, for an injunction to restrain the defendants, who compose the city election commission, from certifying the returns of the election in so far as they relate to said act, plaintiff's contention being that the act in question violates the Constitution of this State and is null and void. A number of constitutional questions are presented and discussed by counsel, which, in our view of the case, it is not necessary here to set forth.

The act in question, among other things, provides for a referendum to the electors, and for a number of additional judges of the recorder's court of the city of Detroit, to be determined on the basis of one judge for each 70,000 population, or majority fraction thereof according to the Federal census of 1910. The defendants answered and the case went to a hearing. Upon the hearing in the court below the temporary restraining order which had been made in the cause was dissolved and the bill of complaint was dismissed. The plaintiff has appealed.

At the threshold of this case we are confronted by two questions, either of which, in our judgment, is decisive of the case. Upon the oral argument of the case in this court it was conceded by counsel that

after the dismissal of the bill below, the defendants had made the certification sought to be restrained, that the judges provided for in the act had been appointed, and were exercising the functions and performing the duties of the office in question. In other words, it now appears to this court that it has before it nothing but abstract questions of law which do not rest upon existing facts or rights. The questions involved are moot questions, and the case becomes a moot case, which we must decline to consider.

In the recent case of *Anway* v. *Railway Co.*, 211 Mich., at page 622, Mr. Justice FELLOWS said:

"Among the numerous cases in which this court has declined to consider abstract questions of law and which we have declined to decide where our conclusions could not be made effective by final judgment, decree, and process, see *Schouwink* v. *Ferguson*, 191 Mich. 284; *Carlson* v. *Wyman*, 189 Mich. 402; *Howe* v. *Doyle*, 187 Mich. 655; *East Saginaw Ry.* v. *Wildman*, 58 Mich. 286; *Hicks* v. *J. B. Pearce Co.*, 158 Mich. 502; *Brown, ex rel. Van Buren*, v. *Lawrence*, 197 Mich. 178; *Ideal Furnace Co.* v. *International Molders' Union*, 204 Mich. 311; *Blickle* v. *Board of Education*, 210 Mich. 196; *Tierney* v. *Union School District*, 210 Mich. 424."

In *Tierney* v. *School District, supra*, it appeared that the granting of the injunction prayed for would be an idle act, and we held that where an appeal presents simply abstract questions of law which do not rest on existing facts or rights, and is therefore a moot case, and that action by the appellate court would be futile, the case will be dismissed.

There is another question or ground for dismissal that is equally decisive. In fact and in law this is a proceeding to test the validity of the statute involved, and the right of the judges appointed under its provisions, to hold the office and exercise its functions. In other words, the title of these men to office is in-

volved, and yet in this proceeding, which is vital to their interests, they are not made parties and have no "day in court." In this State *quo warranto* is the only way to try title to office, finally and conclusively. *Frey* v. *Michie,* 68 Mich. 323. In that case Mr. Justice CAMPBELL, speaking for the court, said:

"The only way to try titles to office finally and conclusively is by *quo warranto.* Even where a mandamus is issued to seat a person who produces the proper evidence of title, it does not settle the title at all. *Doran* v. *DeLong,* 48 Mich. 552; *People* v. *Detroit Common Council,* 18 Mich. 338. It was held in *Jhons* v. *People,* 25 Mich. 499, that the title to office cannot be tried collaterally. See, also, *Curran* v. *Norris,* 58 Mich. 512. And although a bill in equity has a broader operation than a writ of mandamus, and is further reaching, it was held in *Detroit* v. *Board of Public Works,* 23 Mich. 546, that it would not lie to determine between two municipal bodies asserting the same power of appointment, and that the boundaries of their franchises must be determined by *quo warranto.* The bill filed against the board of auditors, referred to in the return, as well as in the petition, came within this decision, and the injunction dissolved by the circuit court should never have been granted. It only lies in aid of *quo warranto,* where expressly authorized by statute, and it does not lie at all to determine the usurpation of office or franchises. But there is no rule of law which will allow the title to office to be tried in a private controversy controlled by individuals."

In *Bolt* v. *Riordan,* 73 Mich. 508, it was held that a proceeding in the nature of *quo warranto* against a person in office is the appropriate manner of testing the validity of the statute under which his office was created. It was also there held that the constitutionality of an act of the legislature under which an office is created may be tested by *quo warranto* proceedings against the incumbent, citing *People* v. *Maynard,* 15 Mich. 463; *Attorney General* v. *Holihan,* 29

Mich. 116, and *Attorney General* v. *Amos*, 60 Mich. 372. See, also, 32 Cyc. p. 1422; 8 L. R. A. 229, note.

In the *quo warranto* case of *People* v. *Doesburg*, 16 Mich. 133, it was held that where an issue was formed, and sent down for trial, the parties could not be deprived of a jury trial against their consent.

In *Roeser* v. *Gartland*, 75 Mich. 143, it was held that *quo warranto* was a proper remedy, where not only the existence of a school district, but the title of its officers, was attacked. See, also, *Atlee* v. *Board of Sup'rs of Wexford Co.*, 94 Mich. 562, citing *Fractional School District* v. *School Inspectors*, 27 Mich. 3.

In *Perrizo* v. *Kesler*, 93 Mich. 280, it was held that proceedings whereby a school district was created out of existing districts could not be reviewed by certiorari after the district had assumed the functions of a corporation, the remedy being by *quo warranto*, citing *Fractional School District* v. *School Inspectors*, *supra*, and *Parman* v. *School Inspectors*, 49 Mich. 63. See, also, *Lachance* v. *Board of Canvassers*, 157 Mich. 679.

*City of Detroit* v. *Board of Public Works*, *supra*, was a chancery case. Mr. Justice CHRISTIANCY, in disposing of the case, there said:

"The whole controversy, therefore, is involved in the single question, whether the defendants are entitled to the offices they claim, as against the officers of the old boards sought to be discontinued. This is a question for which the statute has provided a specific and adequate remedy at law by an information in the nature of a *quo warranto*, which might be instituted upon the relation of the officers claiming to constitute the new board of public works, against the officers of the old board holding over. * * * In any of these proceedings by *quo warranto*, the question in controversy would be the same as that sought to be litigated under the present bill—the constitutionality of the act and the rights of the different officers to the offices they claim the right to hold. And

it does not alter the case that there is also a question whether there are such offices to be filled, or whether there is such a corporation, as all this is involved in the question whether they are entitled to hold such offices, or to exercise such corporate powers.

"It is, therefore, quite clear that there is nothing in the nature of the controversy itself, or question to be tried, which makes it one of equitable cognizance, there being a complete remedy at law for the trial of the right of the respective contestants to the offices in question."

This was said where the officers were parties in the equity suit. How much stronger is the reason, in its application, where, as here, the officers are not parties, and cannot be heard? It is sought in the instant case to try in equity the right of certain persons to a public office.

The court sought to be here reached is a *de facto* court. Of that fact we might take judicial notice.

A *de facto* court is one established and exercising its judicial functions under authority of a statute apparently valid, though such statute may be in fact unconstitutional, and may be afterwards so adjudged. 1 Black on Judgments, § 173; *Burt* v. *Railroad Co.,* 31 Minn. 472 (18 N. W. 285).

In the last cited case it was held that when a court or office is established by a legislative act apparently valid, and the court has gone into operation, or the office is filled and exercised, under the act, it is a *de facto* court or office. Many cases are there cited, and among them, *State* v. *Carroll,* 38 Conn. 467 (9 Am. Rep. 409), where it is said:

"The *de facto* doctrine was introduced into the law as matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers."

212—Mich.—20.

As said by the Minnesota court:

"It would be a matter of almost intolerable inconvenience, and be productive of many instances of individual hardship and injustice, if third persons, whose interests or necessities require them to rely upon the acts of the occupants of public offices, should be required to ascertain at their peril, the legal right to the offices which such occupants are permitted by the State to occupy."

And the doctrine is held to apply to courts as well as other offices. See, also, *Auditors of Wayne Co.* v. *Benoit,* 20 Mich. 176 (4 Am. Rep. 382).

Turning to 1 Black on Judgments, § 173, we find the following:

"In order that a judgment should be recognized as valid, it is of course necessary that it should have been rendered by a lawful and duly constituted court; otherwise it is not 'the sentence of the law,' and is not entitled to carry its sanction. But on principles of public policy and for the security of rights it is held that the regular judgments of a *de facto* court, whose existence has afterwards been pronounced unconstitutional and void, are nevertheless valid and conclusive." Citing *State* v. *Carroll, supra; Burt* v. *Railroad Co.,* 31 Minn. 472 (18 N. W. 285) ; *State* v. *Anone,* 2 Nott & Mc. (S. C.) 27; *Gilliam* v. *Reddick,* 26 N. C. 368; *State* v. *Porter,* 1 Ala. 688; *Mayo* v. *Stoneum,* 2 Ala. 390; *Masterson* v. *Matthews,* 60 Ala. 260; *State* v. *Alling,* 12 Ohio, 16; *Keene* v. *McDonough,* 8 Pet. (U. S.) 308.

At section 175, speaking of acts of a *de facto* judge, the same author says:

"A person may be entitled to this designation who, although he is not a true and rightful incumbent of the office, yet is no mere usurper, but holds it under color of lawful authority. And there can be no question that judgments rendered, and other acts performed by such a person are valid and binding. If a contested election, for example, should result in the ouster of the person who, being entitled on the face of the returns, was commissioned and qualified as judge,

this would not retrospectively invalidate the judgments he may have rendered while in actual possession of the office. So judges elected and duly qualified, and who exercise the functions of their office, are *de facto* officers, although the act under which they were elected was unconstitutional." Citing *Campbell* v. *Commonwealth,* 96 Pa. St. 344; *In re Ah Lee,* 5 Fed. 899; *Carland* v. *Custer County,* 5 Mont. 579 (6 Pac. 24) ; *Taylor* v. *Skrine,* 3 Brev. (S. C.) 516; *Brown* v. *O'Connell,* 36 Conn. 432 (4 Am. Rep. 89) ; *Clark* v. *Commonwealth,* 29 Pa. St. 129; *People* v. *Bangs,* 24 Ill. 184, and other cases.

We are satisfied that it is against the policy of the law of this State to allow the title of a public office to be tried and determined in a private controversy controlled by individuals. In any view of the instant case which we are able to take, we are of the opinion that the bill of complaint was rightfully dismissed.

The decree below dismissing the bill of complaint is affirmed, with costs of this court to the defendants.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.