# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 25, 2011

Rehearing Nos. 576, 578

5 October 2010

138863-66

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

ANGLERS OF THE AuSABLE, INC.,
MAYER FAMILY INVESTMENTS, LLC,
and NANCY A. FORCIER TRUST,
          Plaintiffs-Appellants,

v

DEPARTMENT OF ENVIRONMENTAL
QUALITY, DIRECTOR OF THE
DEPARTMENT OF ENVIRONMENTAL
QUALITY, and MERIT ENERGY COMPANY,
          Defendants-Appellees.
_____/

SC: 138863-138866
COA: 279301, 279306, 280265,
      280266
Otsego CC: 06-011697-CE

On order of the Court, the motions for rehearing are considered, and they are GRANTED. This Court's opinion of December 29, 2010 is VACATED and this appeal is DISMISSED on grounds of mootness, for reasons set forth in the dissenting opinion reported at 488 Mich 91 (2010). The Court of Appeals opinion at 283 Mich App 115 (2009) is also VACATED. See *Grand Traverse Co Prosecutor v Meijer, Inc* (*In re Investigative Subpoenas*), 488 Mich 1032 (2011); *United States v Munsingwear, Inc*, 340 US 36, 39-40 (1950) ("The established practice of the Court in dealing with a civil case . . . which has become moot while on its way here, or pending our decision on the merits, is to reverse or vacate the judgment below. . . . When that procedure is followed, the rights of all parties are preserved. . . .").

"T[he] judicial power . . . is the right to determine *actual* controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." *Anway v Grand Rapids R Co*, 211 Mich 592, 616 (1920) (quoting *Muskrat v United States*, 219 US 346 [1911]) (emphasis added). As a result, "this Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before" it. *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112 (2002). In accordance with these principles, this case is moot because it presents "nothing but abstract questions

of law, which do not rest upon existing facts or rights." *Gildemeister v Lindsay*, 212 Mich 299, 302 (1920). In light of the fact that: (a) defendant has quit-claimed its easement interest back to the riparian owner; (b) defendant no longer has the physical means of discharging water into Kolke Creek or the Au Sable River; (c) defendant is now disposing of the water by alternative means; (d) defendant no longer has a permit that allows discharge into Kolke Creek or the Au Sable River; and (e) the Department of Environmental Quality has attested that "there no longer exists the possibility of surface water discharge to Kolke Creek or the Au Sable River," this is a case of obvious mootness. There is "no reasonable expectation that the wrong will be repeated," *United States v WT Grant*, 345 US 629, 633 (1953), because the very harms that plaintiffs sought to enjoin no longer exist.

YOUNG, C.J. (*concurring*).

I fully join this Court's order and write only to answer a criticism the dissenting statement raises. Justice Cavanagh quotes my dissenting opinion in *United States Fidelity Ins & Guar Co v Michigan Catastrophic Claims Ass'n (On Reh'g)*, 484 Mich 1, 27 (2009) (YOUNG, J., dissenting), and rhetorically asks the question I raised in that case – "What changed?" – that would lead me to support rehearing in the instant case.

The answer is simple: the majority opinion in *USF&G* prevailed over my dissenting opinion, and I see no reason to remain bound by a position that failed to receive majority support two years ago.[1] Today's order merely applies the very same principles that former Justice WEAVER and Justices HATHAWAY, MARILYN KELLY and notably Justice CAVANAGH himself applied in deciding to grant rehearing in *USF&G*. And although Justice CAVANAGH dissents from the order in this case, he does not repudiate his decision to grant rehearing in *USF&G*. Instead, his dissent in the instant case is fully premised on his belief that this Court's previous disposition on the mootness issue "was properly decided." Because I continue to hold the opposite belief—that this Court erred in issuing an opinion on the merits of a moot case[2]—I fully join today's order.

ZAHRA, J. (*concurring*).

---

[1] Moreover, Justice ZAHRA makes a persuasive argument in his concurring statement to this order that my dissenting opinion in *USF&G* interpreted a standard on rehearing that is inapplicable in this Court. Rather, "[n]othing" in the text of the court rules pertaining to this Court "supports the notion that the Court may only grant rehearing where new legal arguments are presented." *Post*, at ___.

[2] See my dissent in the original *Anglers* opinion, 488 Mich at 91.

I concur in the order granting rehearing, which vacates this Court's opinion of December 29, 2010, as well as the Court of Appeals' opinion of March 31, 2009. I write separately to address the propriety of granting a motion for rehearing when there has been a change in the makeup of the Court between the time the Court's initial opinion is released and the date the motion for rehearing is decided.

MCR 7.313(E), this Court's rule governing motions for rehearing, is a discretionary rule as it does not define a standard under which this Court is to decide motions for rehearing.[3] Thus, whether to grant or deny the motion is left to the discretion of the Court. Historically, in exercising discretion, the Justices of this Court consider whether the Court properly interpreted and applied the law. This explains why Justices typically cast votes on rehearing that are consistent with their initial view of the case.[4]

---

[3] MCR 7.313(E) provides:

> (1) To move for rehearing, a party must file within 21 days after the opinion was filed (the date of an opinion is stamped on the upper right corner of the first page):
>
> > (a) 24 copies of a motion prepared as provided in MCR 7.309, if the opinion decided a case placed on a session calendar; or (b) 14 typewritten copies of a motion, if the opinion decided a noncalendar case; and
> >
> > (c) proof that a copy was served on the parties.
>
> The motion for rehearing must include reasons why the Court should modify its opinion.
>
> (2) Unless otherwise ordered by the Court, timely filing of a motion postpones issuance of the Court's judgment order until the motion is denied by the Court or, if granted, until at least 21 days after the filing of the Court's opinion on rehearing.
>
> (3) Any party may answer a motion within 14 days after it is served by filing
>
> > (a) 24 or 14 copies of the motion, depending on whether the motion was filed under subrule (D)(1)(a) or (b); and.
> >
> > (b) proof that a copy was served on the other parties.
>
> (4) Unless ordered by the Court, there is no oral argument.

[4] See e.g., *Bezeau v Palace Sports & Entertainment, Inc*, 488 Mich 904 (2010) (YOUNG, J., dissenting); *Pellegrino v AMPCO System Parking*, 487 Mich 860 (2010) (showing that WEAVER and HATHAWAY, JJ, would grant rehearing); *People v Richmond*, 486 Mich 1041 (2010) (CORRIGAN, J, concurring in part and dissenting in part); *Jackson v Estate of Green*, 485 Mich 869 (2009) (MARKMAN, J., dissenting); *Boodt v Borgess Med Ctr*, 482 Mich 1001, 1002-1004 (2008) (CAVANAGH, J., dissenting); *Gilbert v DaimlerChrysler Corp*, 472 Mich 1201 (2005) (CAVANAGH, MARILYN KELLY, and WEAVER JJ., dissenting).

Generally speaking, a Justice will only change his or her vote when the legal arguments on rehearing persuade the Justice that his or her initial view of the case was erroneous. Not surprisingly, Justices MARILYN KELLY, CAVANAGH, HATHAWAY, MARKMAN and Chief Justice YOUNG view this case in the same light that they did on the date the original opinion was issued. The instant motion thus rises or falls on the votes cast by myself and Justice MARY BETH KELLY. Because we were not seated on the Court when the initial opinion was released, we have no established position in this case.

It is suggested that Justice MARY BETH KELLY and I ought not cast our votes based on the merit of the legal arguments and the correctness of the opinion that is the subject of rehearing and, instead, limit our review to a determination whether any new arguments have been presented to this Court that were not previously presented at the time the opinion under review was released. Nothing in MCR 7.313(E), however, supports the notion that the Court may only grant rehearing where new legal arguments are presented. Significantly, such a constraint exists in the pertinent court rule for the Court of Appeals. Specifically, MCR 7.215(I)(1), which governs motions for rehearing and reconsideration in the Court of Appeals, states that "[m]otions for reconsideration are subject to the restrictions contained in MCR 2.119(F)(3)." MCR 2.119(F)(3) in turn provides that:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

The absence of any reference to MCR 2.119(F) in the rule governing motions for rehearing in this Court, and the express reference to it in the equivalent Court of Appeals rule, leads me to conclude that in deciding the pending motion it is appropriate to consider whether the Court's December 29, 2010 opinion was properly decided, rather than limit review to the question regarding whether new arguments are presented on rehearing.[5]

---

[5] Although this case presents a motion for rehearing, not a motion for reconsideration, I believe the same analysis would apply in considering a motion for reconsideration. See MCR 7.313(F). Moreover, this analysis is wholly consistent with MCR 1.103, which provides:

> The Michigan Court Rules govern practice and procedure in all courts established by the constitution and laws of the State of Michigan. Rules stated to be applicable only in a specific court or only to a specific type of proceeding apply only to that court or to that type of proceeding and control over general rules.

This same conclusion has been reached by virtually every Justice faced with this situation. Then-Justice ALTON DAVIS voted to grant reconsideration where he concluded the Court's prior order was erroneous. *Duncan v State of Michigan*, 488 Mich 957 (2010) (DAVIS, J., concurring). Likewise, Justice HATHAWAY voted to grant rehearing and vacate an opinion originally issued before she joined the Court. *United States Fidelity Ins & Guaranty Co v Michigan Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1 (2009).[6] Then-Justice CORRIGAN and Chief Justice YOUNG did the same in *McCready v Hoffius*, 459 Mich 1235 (1999). History informs us that this is not a recent trend in the Court. See, e.g., *Harmsen v Fizzell*, 354 Mich 60 (1958); *Weller v Mancha*, 353 Mich 189 (1958); *Rumney v Coville*, 51 Mich 186 (1883).[7]

---

MCR 7.313(E) and MCR 7.313(F) govern motions for rehearing and reconsideration in this Court as part of subchapter 7.300, which houses rules applicable *only to this Court*. They are therefore rules stated to be applicable only in a specific court and control over the general rule, 2.119(F), in governing motions for rehearing and reconsideration. As MCR 7.313(E) and (F) are the controlling rules, MCR 2.119(F)(3) would not apply unless somehow incorporated by those rules. MCR 1.103 cannot be read to incorporate MCR 2.119(F)(3) into the rules applicable to motions for rehearing in the Supreme Court. To do so would render meaningless the express reference to MCR 2.119(F)(3) in the rehearing rule applicable to the Court of Appeals, MCR 7.215(I)(1). Simply put, the express reference to MCR 2.119(F)(3) in the Court of Appeals rule would be unnecessary if MCR 1.103 already made MCR 2.119(F)(3) the controlling standard in all Michigan appellate courts.

In an attempt to buttress his argument, Justice CAVANAGH relies on the public internal operating procedures (IOPs) of this Court. However, reference to the IOPs is not helpful in this analysis. First, these procedures are nonbinding and merely observatory guidelines, subject to change at any time without notice. Moreover, these nonbinding procedures suggest only that MCR 2.119(F)(3) be incorporated into review of a motion for reconsideration. Significantly, the IOP for rehearing motions, IOP I(J), makes no reference to MCR 2.119(F)(3). Thus, even if the nonbinding IOPs were looked to for guidance, the conclusion must be reached that MCR 2.119(F)(3) would not apply here because it does not apply to motions for rehearing brought in this Court.

[6] Justice HATHAWAY also would have granted rehearing in *Moore v Secura Ins*, 483 Mich 928 (2009), where the opinion was issued before she joined the Court.

[7] Notwithstanding Justice CAVANAGH's assertion that the members of this Court have generally applied MCR 2.119(F)(3) as the standard for granting rehearing and reconsideration, in each case that he cites the justices referencing MCR 2.119(F)(3) were adhering to their previously stated view of the case. Further, in no decision of this Court has a majority ever applied MCR 2.119(F)(3) as the governing standard for deciding a motion for reconsideration or rehearing. In *United States Fidelity Ins & Guar Co*, 484 Mich at 11 n 12, the majority cited to MCR 2.119(F)(3) in responding to the dissent that

The inquiry does not end, in my opinion, upon review of the correctness of the decision under review. As is evident from the substance of the dissent in this case, which echoes the dissent of Chief Justice YOUNG in *United States Fidelity Ins & Guar Co*, 484 Mich at 27, it can be unsettling to this Court when within the period for rehearing, interpretation of the law changes due to a change in the composition of the Court. See also *Sazima v Shepherd Bar & Restaurant*, 483 Mich 924 (2009) (MARKMAN, J., dissenting). Because of these concerns, my discretion is also guided by consideration of the jurisprudential significance of the issues presented on rehearing.

Justice CAVANAGH claims that the newly composed Court is "undoing recent precedent." Like every Justice on this Court, I respect the role stare decisis plays in Michigan's jurisprudence. That said, every Justice on this Court, with the exception of Justice MARY BETH KELLY and myself, has at one time or another found it appropriate to overrule precedent because the Justice concluded doing so served the best interests of Michigan's jurisprudence. See e.g., *Regents of University of Michigan v Titan Ins Co*, 487 Mich 289 (2010); *Robinson v City of Detroit*, 462 Mich 439 (2000). In my view, the order granting rehearing and vacating the December 29, 2010 opinion does not undo precedent; it restores precedent. Simply stated, the Court disregarded the mootness doctrine so that it could overrule *Preserve the Dunes, Inc v Dep't of Environmental Quality*, 471 Mich 508 (2004), and change the course of over a century of established Michigan water law. Rehearing is properly granted here, not only because the underlying dispute is moot, but also because *Preserve the Dunes* properly interprets Michigan law.[8]

I also disagree with Justice CAVANAGH that the order granting rehearing runs afoul of *City of Erie v Pap's AM*, 529 US 277 (2000). When considering the instant case in its procedural entirety, the situation here is unlike the one in *City of Erie*.[9] In particular,

---

the prior decision to grant rehearing was consistent with that standard. A majority, however, did not apply MCR 2.119(F)(3) when this Court actually granted rehearing in that case. *United States Fidelity Ins & Guar Co v Michigan Catastrophic Claims Ass'n v Michigan Catastrophic Claims Ass'n*, 483 Mich 918 (2009).

[8] It is inconsequential that in considering the merits of this Court's Decmber 29, 2010 opinion that this Court previously denied the motion to dismiss for mootness. Defendants raise the mootness issue in their motions for rehearing. Moreover, the mootness doctrine is jurisdictional as it concerns a court's inherent judicial power, and therefore, can be raised at any time. See *People v Richmond*, 486 Mich 29, 34 (2010). Consideration of the correctness of a decision thus necessarily requires consideration regarding whether this Court acted within the scope of its jurisdiction and judicial power.

[9] In *City of Erie*, the U.S. Supreme Court rejected the plaintiff's argument that the case was moot after the plaintiff voluntarily closed his nude dancing establishment and sold

Merit Energy Company's alternative plan for remediating the pollutant in its groundwater was largely dictated by the circuit court decision to vacate Merit's permit allowing discharge into Kolke Creek. As Chief Justice YOUNG set forth in his dissenting opinion:

> The lead opinion claims that "the trial court has left open the door for Merit to discharge treated water into Kolke Creek at a lower than originally proposed rate." This claim appears plausible when looking solely at the circuit court's June 26, 2007, amended opinion. But that opinion was superseded by subsequent events. In particular, the circuit court's January 31, 2008, opinion ruled that the DEQ had erroneously issued a permit to Merit. Both the Court of Appeals and, eventually, this Court denied defendants' applications for leave to appeal, leaving intact the circuit court's opinion. Accordingly, even if the circuit court's June 26, 2007, decision "left open the door for Merit to discharge treated water into Kolke Creek," its January 31, 2008, decision closed that door, and this Court's denial of leave bolted the door shut. Further, without *either* physical access to Kolke Creek or a valid permit, Merit has no lawful authority to discharge *any* amount of *anything* into Kolke Creek. [*Anglers of the Au Sable v DEQ*, 488 Mich 69, at 107 (2010) (footnote omitted).]

Thus, unlike the voluntary and unilateral actions on the part of the plaintiff in *City of Erie*, the vacation of Merit's permit and this Court's decision to deny leave came about independently from Merit and without action on the part of Merit. As a result, the situation here is not one where a party's voluntary actions are an attempt to insulate a favorable decision from review. Rather, the independent court action invalidating Merit's permit moves this case entirely outside the concerns raised in *City of Erie*.[10] Accordingly, I concur in the Court's order to grant rehearing.

MARY BETH KELLY, J., joins the statement of ZAHRA, J.

CAVANAGH, J. (*dissenting*).

I dissent from the majority's decision to grant defendants' motions for rehearing and vacate this Court's December 29, 2010 opinion. Contrary to Justice ZAHRA's belief that this Court "disregarded the mootness doctrine," this Court previously considered, at great length, defendants' arguments related to this issue, as evidenced by my concurring

---

his property because the plaintiff could reopen his business in another building, as it was still incorporated. *City of Erie*, 529 US at 284-288 and 302-303, Scalia, J., concurring.

[10] See also *Anglers of the Au Sable*, 486 Mich at 986, n 6 (CORRIGAN, J., dissenting), and *id*. at 989, n 10 (YOUNG, J., dissenting) persuasively distinguishing *City of Erie* from the instant case.

statement and the three "emphatic[]" dissenting statements to this Court's June 18, 2010 order denying defendant Merit's motion to dismiss for mootness. *Anglers of the AuSable, Inc v Dep't of Environmental Quality*, 486 Mich 982, 994 (2010) (YOUNG, J., dissenting). Defendants make no new arguments in their current motions, and the June 18, 2010 order was properly decided, therefore, reconsideration on mootness grounds is improper.[11]

---

[11] I cannot join Justice ZAHRA's belief that MCR 2.119(F)(3) does not apply to this Court's review of motions for rehearing and reconsideration. Although it is true that MCR 7.313(E) and MCR 7.313(F) apply only to this Court and do not expressly cross-reference MCR 2.119(F)(3), MCR 1.103 addresses the general applicability of the Court Rules and states that the rules "govern practice and procedure in *all courts . . . .* Rules stated to be applicable only in a specific court or only to a specific type of proceeding apply only to that court or to that type of proceeding and control over the general rules." (Emphasis added.) Thus, because MCR 7.313(E) and MCR 7.313(F) offer no standard for considering motions for reconsideration and rehearing and MCR 2.119(F)(3) does not state that it is applicable only in specific courts or to a specific type of proceeding, it appears that it is applicable to this Court's consideration of motions for reconsideration and rehearing.

This Court's own publicly available Internal Operating Procedures further support the premise that MCR 2.119(F)(3) applies to this Court's review of motions for rehearing and reconsideration. Indeed, IOP I(E)(5)(b)(ii) states "MCR 7.313(E) does not specify grounds for a motion for reconsideration. The same general principles that govern motions for reconsideration in trial courts apply. MCR 2.119(F)(3)." I acknowledge that the introduction to the Internal Operating Procedures explains that "[t]he Michigan Court Rules are and remain the governing procedures of this Court," but the introduction also states that the procedures "could be grouped under the heading 'How Things Work at the Supreme Court'" and that "the goal of [the procedures] was to set forth those features of our internal procedures that might benefit the appellate practitioner." Further, IOP I(E)(5)(b)(ii) is consistent with MCR 1.103's directive that the Court Rules "govern practice and procedure in all courts" unless otherwise stated. Thus, because our Internal Operating Procedures are available for public review and are intended to assist the appellate practitioner in navigating a course through this Court, I believe that they should not be summarily ignored.

Finally, although I believe that MCR 2.119(F)(3) does apply to this Court's consideration of motions for reconsideration and rehearing, I agree that the Court retains an element of discretion given that MCR 2.119(F)(3) states that it "[g]enerally" applies and that it does not "restrict[] the discretion of the court." Nevertheless, the members of this Court have generally applied MCR 2.119(F)(3) as the standard for determining whether granting a motion for reconsideration or rehearing is proper. See, e.g., *Duncan v State*, 486 Mich 1071, 1074 (2010) (MARILYN KELLY, C.J., dissenting); *McCormick v Carrier*, 485 Mich 851-852 (2009) (WEAVER, J., concurring); *Univ of Michigan Regents v Titan Ins Co*, 484 Mich 852, 853-854 (2009) (YOUNG, J., dissenting); *United States*

Apparently, some members of the majority are now willing to rely merely on the ever-changing nature of the Au Sable River as reason to reverse course, contrary to their previous statements. Indeed, only two short years ago, Chief Justice YOUNG eloquently bemoaned this Court's reconsideration of a matter after a change in this Court's composition. In his dissent in *United States Fidelity Ins & Guar Co v Michigan Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 27 (2009), the Chief Justice stated:

## I. WHAT CHANGED?

> The facts have not changed. The text of the statute at issue has not changed. The parties' arguments have not changed. And the rationale advanced in the opinions of this Court has not changed. Yet, within a matter of months, a decision of this Court, thoughtfully briefed, argued, and considered by seven justices, is no longer worth the paper it was written on. Even the casual observer, however, does not really need to ask why. The reason is obvious: . . . the composition of this Court changed.

Now, in what appears to be "*déjà vu* all over again," Chief Justice YOUNG is happy to join in our newly composed Court's undoing of recent precedent. I find interesting Chief Justice YOUNG's freshly announced willingness to forgo his position in *USF&G* because he now sees "no reason to remain bound by a position that failed to receive majority support two years ago." *Ante* ___. While Chief Justice YOUNG is obviously free to change his mind, it is worth noting that his decision comes now, when it suits his previous dissenting position in this case, yet he consistently held fast to his *USF&G* dissent, see *Lansing Sch Educ Ass'n v Lansing Bd of Educ*, 485 Mich 966, 967 n 10 (2009) (YOUNG, J., dissenting); *University of Michigan Regents v Titan Ins Co*, 484 Mich 852, 853-855 (2009) (YOUNG, J., dissenting), even as recently as the end of last term. See *McCormick v Carrier*, 487 Mich 180, 266 (2010) (MARKMAN, J., dissenting).

Also, Justice ZAHRA errs in the application of his newly-created standard for reviewing motions for reconsideration and rehearing. Even if one accepts that a Justice may consider the merits of the legal arguments, correctness of the opinion, and

---

*Fidelity Ins & Guar Co v Michigan Catastrophic Claims Ass'n*, 484 Mich 1, 3 n 12 (2009); *People v Osaghae*, 460 Mich 529, 535 (1999) (MARILYN KELLY, J., dissenting). See, also, IOP I(E)(5)(b)(ii). Furthermore, older caselaw from this Court indicates that MCR 2.119(F)(3) reflects this Court's historic standard for deciding motions for reconsideration and rehearing. See, e.g., *Thompson v Jarvis*, 40 Mich 526 (1879) (denying a motion for rehearing because "nothing [was] suggested beyond what was considered by the court upon original arguments . . . .").

jurisprudential significance of the issues presented,[12] Justice ZAHRA, in concurring with this Court's order reversing on *mootness* grounds, considers the merits of the legal arguments and correctness of the *June 18, 2010 order*, not this Court's December 29, 2010 opinion. Defendants did not file a motion for reconsideration of this Court's June 18, 2010 order; therefore, the majority's reaching to grant rehearing of this Court's subsequent opinion is quite a stretch.

Furthermore, Justice ZAHRA's claim that this Court's order "restores precedent" because it breathes new life into *Preserve the Dunes, Inc v Dep't of Environmental Quality*, 471 Mich 508 (2004), is true only from a very narrow perspective. As Justice MARILYN KELLY explained in her concurring opinion in this case, "*Preserve the Dunes* is of relatively recent vintage, having been decided a mere six years ago. . . . Moreover, *Preserve the Dunes* represented a sea change in one area of the law and toppled settled interpretations of MEPA that had existed for nearly 30 years." *Anglers of the AuSable, Inc v Dep't of Environmental Quality*, 488 Mich 69, 88 (2010) (MARILYN KELLY, J., concurring) (citing *Eyde v Michigan*, 393 Mich 453, 454 (1975); *Ray v Mason Co Drain Comm'r*, 393 Mich 294, 304-305 (1975); *West Mich Environmental Action Council v Natural Resources Comm*, 405 Mich 741, 751, (1979); *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16 (1998)). Thus, in essence, the majority believes that rehearing is proper in this case merely because it permits them to resuscitate a precedent with which they agree.

Finally, as I explained in my concurring statement to the order denying the motion to dismiss for mootness, *Anglers of the AuSable*, 486 Mich at 982-985, this case is not moot. The United States Supreme Court has warned appellate courts to be particularly wary of finding an issue moot when there remains "a public interest in having the legality of the practices settled," *United States v WT Grant Co*, 345 US 629, 632-633 (1953), and when the party seeking to moot the issue is the party who prevailed in the lower court. *City of Erie v Pap's AM*, 529 US 277, 287-288 (2000). Such concern is necessary because any effort to circumvent the Court's jurisdiction by a party through its voluntary actions is repugnant to an appellate court's "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review." *Id*. at 288. See, also, *City News & Novelty, Inc v City of Waukesha*, 531 US 278, 283-284 (2001). The majority's decision to grant the motions for rehearing and dismiss this case as moot despite the utter lack of new arguments relating to this issue is perhaps even more repugnant to this principle.

The majority's decision to vacate this Court's opinion leaves unanswered several questions of significant public concern, including whether plaintiffs have a cause of

---

[12] I would note that Justice ZAHRA's new standard will almost always boil down to a Justice's decision on the "correctness of the opinion" because it would be rare for this Court to consider an issue that is not jurisprudentially significant, see MCR 7.302(B)(3), nor does this Court often entertain frivolous legal arguments.

action to challenge the DEQ's decision to issue a permit to discharge water into Kolke Creek and the proper method to determine the reasonableness of water use. Further, and perhaps most importantly, the majority's decision encourages gamesmanship by permitting defendants to "insulate a favorable decision from review" because defendants' unilateral actions were the basis for Merit's motion to dismiss for mootness, just as in *City of Erie*. The plaintiff-respondent in *City of Erie* filed an affidavit after the United States Supreme Court granted certiorari stating that he had closed his business, sold his property, and never intended to operate a nude dancing establishment again. *City of Erie*, 529 US at 284-288, 302-303 (Scalia, J., concurring). The *City of Erie* Court reasoned that the plaintiff-respondent could still obtain another building and reopen the establishment, given that it was still incorporated under state law. *City of Erie*, 529 US at 287. Similarly, in this case, defendant Merit could obtain another easement and pursue a discharge that would constitute a reasonable use of the water under the existing test. The *City of Erie* Court also reasoned that both parties had a continuing interest in the litigation because the city could not enforce its ordinance under the lower court's decision, even against other parties, and the plaintiff-respondent still had an interest in preserving the lower court's decision in favor of his rights. *Id*. at 288. In *City of Erie*, the city's inability to enforce its ordinance against the plaintiff-respondent and other inhabitants of the city constituted an ongoing injury. Similarly, here, plaintiffs' ability to enforce their riparian interests against defendant and other parties seeking to use Kolke Creek will continue to be affected by the conclusion that plaintiffs lack a cause of action to challenge the DEQ's decision to issue a permit to discharge water into Kolke Creek and the unanswered question regarding the proper method to determine the reasonableness of water use.

The majority attempts to address this problem by vacating the Court of Appeals opinion in this case, but its efforts fail. By erroneously concluding that this case is moot, the majority rewards defendants by insulating them from the unfavorable result of this Court's well-reasoned opinions. Furthermore, the cases cited by the majority in support of its decision to vacate the Court of Appeals opinion address situations where appellate review was "prevented through *happenstance*," *United States v Munsingwear, Inc*, 340 US 36, 40 (1950) (emphasis added), i.e., "due to circumstances *unattributable to any of the parties*." *Karcher v May*, 484 US 72, 83 (1987) (emphasis added). See, also, *US Bancorp Mortg Co v Bonner Mall Partnership*, 513 US 18, 22-23 (1994). And, while the United States Supreme Court has concluded that, in some situations, vacation of a lower court decision is proper when a party who seeks review of the merits of an adverse ruling is frustrated by the "unilateral action of the party who prevailed below," *US Bancorp*, 513 US at 25, that Court has also concluded that unilateral attempts to moot a case only after leave to appeal is granted should not be well received. See *City of Erie*, 529 US at 288 (noting that the defendant raised the mootness issue after the Court granted certiorari). Indeed, in this case, defendants' attempts to moot this case and insulate its favorable result began only after this Court granted leave to appeal.

Thus, I cannot agree that this case presents no justiciable issues. Rather, because the mootness issue was already thoughtfully considered by this Court and defendants merely present the same unconvincing arguments, I would deny defendants' motions for rehearing.

MARILYN KELLY, and HATHAWAY, JJ., join the statement of CAVANAGH, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 25, 2011

_Corbin R. Davis_
Clerk

t0421