**C O U R T   O F   A P P E A L S**

THOMAS R. OKRIE and ALL OTHERS
SIMILARLY SITUATED,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN, GOVERNOR,
DEPARTMENT OF TECHNOLOGY
MANAGEMENT AND BUDGET, OFFICE OF
RETIREMENT SERVICES, STATE
EMPLOYEES RETIREMENT SYSTEM,
MICHIGAN PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM, and DEPARTMENT
OF TREASURY,

        Defendants-Appellees.

UNPUBLISHED
June 16, 2016

No.   326607
Court of Claims
LC No.   13-000093-MK

Before:  SAWYER, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Plaintiff appeals as of right the Court of Claims's order (1) granting defendants' motion for summary disposition under MCR 2.116(C)(8) and (C)(10) regarding all eight counts of plaintiff's first amended complaint, (2) denying plaintiff's cross-motion for summary disposition, (3) denying plaintiff's motion to file a second amended complaint, and (4) denying, as moot, plaintiff's motion for class certification.  We affirm.

## I.  FACTUAL BACKGROUND

Plaintiff, who was born in 1946, served for 33 years as a health and social studies teacher in the Troy School District.  According to plaintiff, he regularly consulted the Michigan Public School Employees Retirement System's (MPSERS) guideline booklets that were published by defendant Office of Retirement Services (ORS).  These booklets all contained the statement that "Pensions paid by MPSERS are exempt from Michigan state income tax and Michigan city tax."  However, the booklets also contained the following disclaimer:

> Remember, this book is a summary of the main features of the plan and not a complete description.  The operation of the plan is controlled by the Michigan

Public School Employees Retirement Act (Public Act 300 of 1980, as amended). If the provisions of the Act conflict with this summary, the Act controls.

During the pertinent timeframe, a guideline booklet from the State Employees' Retirement System (SERS) stated, "Pensions paid by the State Employees' Retirement System are exempt from the Michigan state and city income tax," while also indicating that the ORS "will process your retirement application and pay your pension under the provisions of the State Employees' Retirement Act, 1943 P.A. 240, as amended."

Plaintiff claims that he relied on the statements in such guideline booklets when deciding whether and when to retire. He believed that the statements constituted a promise that his pension income would remain tax exempt throughout his retirement. Additionally, plaintiff alleges that he purchased 4.698 year of service credit to increase the value of his pension and that he entered into the Michigan Investment Plan (MIP), under which he contributed regular portions of his salary in exchange for a yearly increase on his best three years of service in his pension plan.

Plaintiff submitted the necessary paperwork to MPSERS to begin his retirement in July 2000. As part of the process, plaintiff filled out an "Income Tax Information" form that stated his pension income would be exempt from state and local tax. After retiring, plaintiff received his first remittance. No state tax was withheld. Plaintiff continued to receive such remittances—without state income tax being withheld—for 11 years. But the tax treatment changed with the entry into force of 2011 PA 38 and related legislation that removed the tax-exempt status of plaintiff's pension benefits.

The history of 2011 PA 38 and related legislation is chronicled by *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295; 806 NW2d 683 (2011) (*Advisory Opinion*), in which our Supreme Court noted that "[b]efore the enactment of 2011 PA 38, public-pension benefits were completely deductible . . . and all taxpayers were entitled to a personal exemption of $2,500 (subject to annual inflation adjustments)." *Id.* at 305-306. However, after the effective date of 2011 PA 38:

> [O]nly those taxpayers whose total household resources are less than $75,000 for a single return or $150,000 for a joint return are entitled to the entire personal exemption . . . while those taxpayers whose total household resources are between $75,000 and $100,000 for a single return or $150,000 and $200,000 for a joint return are entitled to a portion of this personal exemption, and those taxpayers whose total household resources exceed $100,000 for a single return or $200,000 for a joint return are not entitled to any portion of the personal exemption.

> In addition, while 2011 PA 38 does not affect the available pension deductions of those people born before 1946, it does affect the pension deductions of those people born in 1946 and thereafter. MCL 206.30(9). For those people born on or after January 1, 1946 and not after December 31, 1952, public and private pensions are subject to the same deductions up to $20,000 for a single return and $40,000 for a joint return. MCL 206.30(9)(b). And, upon reaching the age of 67, although the pension deductions are no longer available, a general deduction is

available for those people up to $20,000 for a single return and $40,000 for a joint return as long as the taxpayer's total household resources do not exceed $75,000 for a single return or $150,000 for a joint return. [*Id.* at 306-307.]

Plaintiff filed his original complaint in this action on behalf of himself and all other Michigan public school teacher retirees and State employee retirees who were born after 1945 and had begun receiving pension benefits from their retirement plan prior to the effective date of 2011 PA 38. Plaintiff's complaint contained two counts, one for promissory estoppel and one for equitable relief. The parties filed competing motions for summary disposition. But prior to the trial court ruling on those motions, plaintiff filed an amended complaint that added counts for unjust enrichment, breach of contract under traditional contract principles, violation of the Contract Clauses of the Michigan and United States Constitutions, violation of the Takings Clause of the Michigan and United States Constitutions, violation of substantive due process, and violation of procedural due process. Plaintiff also filed a second motion for summary disposition with respect to his first amended complaint. Shortly thereafter, the trial court granted defendant's first motion for summary disposition on the counts in plaintiff's original complaint. Defendants then filed their second motion for summary disposition, in which they sought dismissal of all counts in plaintiff's amended complaint.

Subsequently, plaintiff filed a motion seeking to file a second amended complaint to add counts for breach of a purchase of service credit contract and for breach of the Michigan Investment Plan contract. Defendants responded by filing a motion opposing plaintiff's request to file a second amended complaint, along with a motion for summary disposition regarding plaintiff's first amended complaint. Plaintiff also filed a motion seeking class certification.

Ultimately, the Court of Claims entered an order granting defendants' motion for summary disposition and denying plaintiff's motions. With regard to the parties' cross-motions for summary disposition, the Court of Claims reasoned,

> Woven within plaintiff's legal theories is a common thread. Plaintiff views the former exemption from state and city income tax as an inseparable part of the financial value of the defined benefit plan to which he is entitled. Just as an employer may not reduce the amount of the pension benefit, plaintiff argues, the state may not change the tax treatment of the pension benefit so as to effectively reduce its value. . . . Many find persuasive the approach in *Herrick v Lindley*, 59 Ohio St 2d 22, 27; 391 NE2d 729 (1979), where the court explained that "there is a definite legal distinction between reducing the rate of a pension and levying a tax upon the income received from that pension." This is the view adopted by the Michigan Supreme Court in [*Advisory Opinion*].[1] . . . . In the present ruling, th[e] Court [of Claims] will again follow the approach of the Supreme Court in recognizing that pension income is distinct from tax treatment of the income.
>
> * * *
>
> Statements that pensions "are exempt," whether made in statutes or retirement advisory materials, do not make or imply any promises regarding future tax treatment.

[1] An advisory opinion by the Supreme Court is not precedentially binding in the same sense as a decision of the Court after a hearing on the merits, but it may be

-3-

persuasive authority. *AFT Michigan v Michigan*, 303 Mich App 651, ___; ___NW2d ___ (2014); slip op at 14 n 4. [Citations omitted.]

On that basis, the Court of Claims ruled that summary disposition in favor of defendants was appropriate regarding each of the claims asserted in plaintiff's amended complaint. Under essentially the same rationale, the Court of Claims held that the new claims plaintiff sought to assert by amending his complaint were also fatally flawed:

> Plaintiff seeks to add two new counts. Proposed Count IX is for "Breach of an Investment Contract Regarding the Purchase of Service Credit." In this count, plaintiff alleges that he and similarly situated employees purchased service credit to increase the value of the pension benefit "premised upon the State's reciprocal promise that the investment returns would be free from state and local income taxation." Plaintiff alleges that the state breached the contracts by subjecting the investment returns of the service credit to state and local income taxation. Proposed Count X alleges that plaintiff and similarly situated employees made investment decisions to enter into an investment contract with [MIP] "based upon the condition that the yearly increase in their pensions was exempt from state and local income taxation in retirement."
>
> Plaintiff's proposed new claims are simply variations on the theme of the previous two complaints. Absent an enforceable promise or contractual obligation for a perpetual tax exemption, the proposed claims will fare no better than their predecessors. The amendment would therefore be futile. Accordingly, plaintiff's motion to amend the complaint is denied. [Citation omitted.]

Finally, the Court of Claims denied plaintiff's motion for class certification, reasoning that its earlier decisions had rendered that motion moot.

Defendant reacted by filing a motion for reconsideration, which the Court of Claims denied. In so ruling, the Court reasoned, "Plaintiff has not demonstrated a palpable error by which the Court and the parties have been misled and has not shown that a different disposition of the motion must result. MCR 2.119(F)." This appeal followed.

## II. STANDARDS OF REVIEW

We review the trial court's grant of summary disposition pursuant to MCR 2.116(C)(8) and (C)(10) "de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Constitutional issues are also reviewed de novo, *Barrow v City of Detroit Electric Comm*, 301 Mich App 404, 411; 836 NW2d 498 (2013), whereas a trial court's decision denying a motion to amend a pleading is reviewed for an abuse of discretion, *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). "An abuse of discretion occurs when the court's decision results in an outcome that falls outside the range of principled outcomes." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015).

III.  ANALYSIS

A.  BREACH OF CONTRACT

Plaintiff argues that the Court of Claims erred by summarily dismissing his breach of contract claim.  We disagree.

"The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation."  *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012).

> [A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.  This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state.  Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.  Indeed, the continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation.  Thus, the party asserting the creation of a contract must overcome this well-founded presumption, and we proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation.

> The first step in this cautious procession is to examine the statutory language itself.  In order for a statute to form the basis of a contract, the statutory language must be plain and susceptible of no other reasonable construction than that the Legislature intended to be bound to a contract.  If the statutory language provides for the execution of a written contract on behalf of the state the case for an obligation binding upon the state is clear. . . . But, absent an adequate expression of an actual intent of the State to bind itself, courts should not construe laws declaring a scheme of public regulation as also creating private contracts to which the state is a party.  [*Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 661-662; 698 NW2d 350 (2005) (quotation marks, citations, and brackets omitted).]

At issue in *Studier* were amendments to the MPSERS health care plan for retirees that increased the amount of the deductibles retirees would be required to pay and also increased the copays and out-of-pocket maximums that retirees would pay for prescriptions.  *Id.* at 646.  The plaintiffs were "six public school retirees" that alleged the increases imposed by statute violated the contract clauses of the Michigan and United States Constitutions.  *Id.* at 647-648.  In addressing whether these legislative amendments violated contractual obligations imposed by the previous versions of the statute, the Supreme Court noted that nowhere in the statute at issue "did

the Legislature provide for a written contract on behalf of the state of Michigan or even use terms typically associated with contractual relationships, such as 'contract,' 'covenant,' or 'vested rights.' " *Id.* at 663-664. The *Studier* Court added that "[h]ad the Legislature intended to surrender its legislative powers through the creation of contractual rights, it would have expressly done so by employing such terms" and that "nowhere in the statute did the Legislature covenant that it would not amend the statute to remove or diminish the obligation of the MPSERS." *Id.* at 664-665.

In *Advisory Opinion*, the Michigan Supreme Court reasoned that 2011 PA 38 was similar to the statutory provisions at issue in *Studier* in that neither "contain[ed] any language 'provid[ing] for a written contract on behalf of the state of Michigan or even use[d] terms typically associated with contractual relationships, such as "contract," "covenant," or "vested rights." ' " *Advisory Opinion*, 490 Mich at 321, quoting *Studier*, 472 Mich at 663-664. Similarly, the *Advisory Opinion* Court noted that nowhere in the statutory language did the Legislature promise or state that the statutes could not be amended or that it was surrendering its power to amend them. *Id.* at 322-323. The Court concluded that, absent any language in the statutes indicating that the Legislature intended to be contractually bound, "the tax exemption statutes do not create contractual rights that cannot be altered by the Legislature." *Id.* at 324.

While the *Advisory Opinion* Court's holding does not bind our decision here,[1] we find its reasoning highly persuasive, especially in light of *Studier*. Plaintiff has pointed to no language in the Income Tax Act, MCL 206.1 *et seq*, the State Employees Retirement Act, MCL 38.1 *et seq*, or the Public School Employees Retirement Act, MCL 38.1301 *et seq*, that shows an adequate expression that the Legislature actually intended for the State to be bound contractually. Additionally, plaintiff has not pointed to any terms such as "contract," "covenant," or "vested rights" in the pertinent provisions of the germane acts. By failing to identify language indicating that the Legislature intended to bind successive Legislatures by precluding amendment of the tax-exempt status of plaintiff's pension, plaintiff has failed to rebut the presumption that the Legislature did "not intend[] to create private contractual or vested rights but merely [to] declare[] a policy to be pursued until the [L]egislature [] ordain[ed] otherwise." See *Studier*, 472 Mich at 661 (quotation marks and citations omitted).

Plaintiff, however, argues that, notwithstanding the language in the relevant statutes, he and others like him have a contractual right to a tax-exempt pension or its financial equivalent due to statements made by MPSERS in its guideline booklets (i.e., statements that public pension income was tax-exempt). However, those booklets also explicitly state that "the plan is controlled by the Michigan Public School Employees Retirement Act (Public Act 300 of 1980, as amended)" and that "[i]f the provisions of the Act conflict with this summary, the Act controls." While the booklets did not explicitly inform plaintiff that their provisions were

---

[1] *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 460 n 1; 208 NW2d 469 (1973) ("It is important to emphasize the fact that an advisory opinion does not constitute a decision of the Court and is not precedentially binding in the same sense as a decision of the Court after a hearing on the merits.").

subject to change, they *did* explicitly inform him that his retirement plan was governed by a statute. "Of primary importance to the viability of our republican system of government is the ability of elected representatives to act on behalf of the people through the exercise of their power to enact, amend, or repeal legislation." *Studier*, 472 Mich at 660. At most, statements in the booklets informed plaintiff of *extant* tax policy; they provided no promise regarding *future* tax policy. See *Advisory Opinion*, 490 Mich at 322 n 29 ("The fact that the language 'are exempt' was put in the present tense indicates that the Legislature simply intended pension and retirement incomes to be exempt from taxation while this statutory language remained the law. However, it does not indicate any intent to forever prohibit a future Legislature from changing this law and making pension and retirement incomes subject to taxation."). Nothing in the booklets can be said to create a binding contractual obligation on the part of defendants to give plaintiff and those like him a perpetual tax exemption or comparable benefit. We also note that the Michigan Constitution provides the legislative branch with the power to tax, Const 1963, art 9, § 1, and it explicitly states that "[t]he power of taxation shall never be surrendered, suspended or contracted away," Const 1963, art 9, § 2. As such, none of the named defendants in this case had authority to contract away the Legislature's taxation power.

Plaintiff also argues that defendants are judicially estopped from contesting the contractual nature of public pension tax exemptions due to a position taken in *Davis v Mich Dep't of Treasury*, 489 US 803; 109 S Ct 1500; 103 L Ed 2d 891 (1989). The doctrine of judicial estoppel states that "a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." *Opland v Kiesgan*, 234 Mich App 352, 362; 594 NW2d 505 (1999). "[T]here must be some indication that the court in the earlier proceeding accepted the party's position as true." *Id.* Here, there is no indication that defendants are asserting a position that was accepted by the *Davis* Court. On the contrary, that Court explicitly rejected the State's argument. *Davis*, 489 US at 816. Thus, plaintiff's instant argument necessarily fails.

Finally, plaintiff argues that defendants are equitably estopped from contesting the contractual nature of the previous tax exemption laws due to statements made in the guidelines booklets. Equitable estoppel is "a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999). "Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Id.* at 141. Here, plaintiff attempts to use the doctrine of equitable estoppel not to preclude defendants from "asserting or denying the existence of a particular fact" but to preclude defendants from asserting a specific legal position (i.e., that the previous statutory provisions that exempted public pension income from state and local taxation were not a contractual right). However, even if that legal position were considered a fact, plaintiff has pointed to no statutory language indicating that the statutory provisions at issue created a private contractual right. Therefore, plaintiff's equitable estoppel argument also necessarily fails.

In sum, regarding his breach of contract claim, plaintiff is unentitled to relief under the traditional contract theories discussed *supra*. Consequently, summary disposition of that claim was appropriately granted.

## B. PROMISSORY ESTOPPEL

Plaintiff argues that the Court of Claims erred when it granted defendants summary disposition regarding his promissory estoppel claim. We disagree.

"Promissory estoppel is a judicially created doctrine that was developed as an equitable remedy applicable in common-law contract actions." *Crown Tech Park v D&N Bank, FSB*, 242 Mich App 538, 548 n 4; 619 NW2d 66 (2000). A party seeking to invoke the doctrine must show the existence of a promise, that the promisor should have reasonably expected the promise induce the promissee to act, that the promisee relied on the promise, and that the promise must be enforced to avoid injustice. *Id.* at 548-549. "In order to justify reliance and thus supply the predicate for an estoppel theory, a promise must be 'actual, clear, and definite.' " *Gore v Flagstar Bank, FSB*, 474 Mich 1075 (2006) (TAYLOR, C.J., concurring) (quotation marks and citation omitted); see also *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008) ("The promise must be definite and clear[.]").

Plaintiff argues that a promise was conveyed to him in the guideline booklets that he received; namely, that his pension benefits would be tax-exempt in perpetuity. As explained *supra*, however, the booklets contained no such promise. Thus, plaintiff's instant argument fails. The trial court did not err by granting defendants summary disposition regarding plaintiff's promissory estoppel claim.[2]

## C. UNJUST ENRICHMENT

Plaintiff next argues that, by granting defendants summary disposition regarding his unjust enrichment claim, the Court of Claims erred. We disagree.

"The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morag-Kelly Investment Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013). In the present case, the benefit cited by plaintiff is his labor, specifically his 33 years of service as a public school teacher. In this regard, it is worth noting that plaintiff

---

[2] Plaintiff's reliance on *Toussaint v Blue Cross & Blue Shield*, 408 Mich 579; 292 NW2d 880 (1980), is misplaced. In *Toussaint*, our Supreme Court found that Blue Cross had issued manuals and guidelines with statement of company policy. *Id.* at 613-614. The Court held that "employer statements of policy, such as the Blue Cross Supervisory Manual and Guidelines, can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights." *Id.* at 614-615. However, in *Rood v Gen Dynamics Corp*, 444 Mich 107, 138; 507 NW2d 591 (1993) (emphasis in original), the Supreme Court stated that a threshold inquiry to establishing "a legitimate expectations claim under *Toussaint*, is to determine *what*, if anything, the employer has promised." When terms are indefinite, it is unlikely a promise has been made, and without such a promise there is nothing to enforce. *Id.* at 139. Here, because no promise was made, there is no promise to enforce.

acknowledges that his employer during those years was a nonparty school district, not the named defendants. As this Court explained in *Karaus v Bank of New York Mellon*, 300 Mich App 9, 24; 831 NW2d 897 (2012):

> A third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties. . . . Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person. [Quotation marks and citations omitted; ellipsis in original.]

The defendants in this litigation are the various state government officials and departments who administer public school teachers' and state employees' retirement programs and the Department of Treasury, which collects taxes. Plaintiff has not alleged that he provided any benefit to those named defendants. Furthermore, he offers no argument that defendants are liable as third parties under the theories discussed in *Karaus*. We will not supply such argument for him. This Court does not function as a research assistant for the parties before it. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow."). Ergo, plaintiff's instant claim of error warrants no relief.

## D. CONTRACTUAL IMPAIRMENT

Next, plaintiff argues that the legislation resulting from 2011 PA 38 is unconstitutional as applied to the facts of this case because it impaired a contractual obligation owed him by defendants. We disagree.

Michigan's Constitution states that "[n]o bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." Const 1963, art 1, § 10. Similarly, the United States Constitution states that "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." US Const, art I, § 10, Cl 1. A "threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Reserves Group v Kansas Power & Light Co*, 459 US 400, 411; 103 S Ct 697; 74 L Ed 2d 569 (1983) (quotation marks and citation omitted). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp v Romein*, 503 US 181, 186; 112 S Ct 1105; 117 L Ed 2d 328 (1992). The question of impairment need not be reached when there is no contractual agreement at issue. *Id.*

Because we conclude that no contractual relationship existed, we need not proceed to the question of impairment. As applied to the facts of this case, the legislation resulting from 2011 PA 38 does not contravene the contract clauses of our federal and state constitutions.

## E. GOVERNMENTAL TAKING

In another constitutional argument, plaintiff contends that 2011 PA 38 unlawfully took a vested proprietary interest from him—specifically, his interest in a perpetual tax exemption for his pension benefits—without offering just compensation. We disagree.

The Fifth Amendment to the United States Constitution states that "nor shall private property be taken for public use, without just compensation." US Const, Am V. The Michigan Constitution similarly states that "[p]rivate property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law." Const 1963, art 10, § 2. Even assuming, arguendo, that the impairment of a contractual interest is sufficient to support a claim under the above takings clauses,[3] plaintiff does not have a contractual right to a tax-exempt pension in perpetuity. "[A] taxpayer does not have a vested right in a tax statute or in the continuance of any tax law." *City of Detroit v Walker*, 445 Mich 682, 703; 520 NW2d 135 (1994). Because plaintiff did not have a property interest in a perpetual tax exemption to his pension benefits, there is no violation of the takings clause in either the Michigan Constitution or the United States Constitution.

## F. MOTION TO AMEND

Finally, plaintiff argues that the Court of Claims erred by denying, as futile, his motion to amend his complaint. We again disagree.

"Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons." *Wormsbacher v*

---

[3] That proposition is by no means certain. Compare *Lynch v United States*, 292 US 571, 579; 54 S Ct 840; 78 L Ed 1434 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States.") and *Connolly v Pension Ben Guar Corp*, 475 US 211, 224; 106 S Ct 1018; 89 L Ed 2d 166 (1986) ("If the regulatory statute is otherwise within the powers of Congress . . . its application may not be defeated by private contractual provisions. For the same reason, the fact that legislation disregards or destroys existing contractual rights does not always transform the regulation into an illegal taking."). See also *Pro-Eco, Inc v Bd of Comm'rs of Jay Co, Indiana*, 57 F3d 505, 510 n 2 (CA 7, 1995) (interpreting "*Connolly*, in conjunction with the line of authority stating that [federal circuit courts] should look to states to find property rights under the Takings Clause, as effectively overruling . . . *Lynch*[.]").

*Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009). "Reasons that justify denying leave to amend include . . . futility." *Id.* "An amendment would be futile if it is legally insufficient on its face, and the addition of allegations that merely restate those allegations already made is futile." *Id.* at 8-9.

In plaintiff's proposed second amended complaint, he alleged that he purchased 4.698 years of service credit with his own money "toward his tax exempt pension" and that he entered into the MIP, in which he contributed portions of his salary to defendants "in exchange for a yearly increase of 3% on [his] best three years of years of [sic] service." Plaintiff further alleged that, by not continuing the tax-exempt status of his pension benefits, defendants broke the purchase of service credit agreement and the MIP agreement. The only difference between the breach of contract claims asserted in plaintiff's first amended complaint and those he sought to add is the form of consideration allegedly provided by plaintiff. The latter alleged that he paid portions of his *salary* in exchange for a deferred benefit whereas the former alleged that he exchanged his *labor* in exchange for that benefit. Regardless of the consideration at issue, however, plaintiff has failed to show that he was promised that his deferred benefit would remain tax-exempt in perpetuity. As the Court of Claims aptly put it, "Plaintiff's proposed new claims are simply variations on the theme of the previous two complaints. Absent an enforceable promise or contractual obligation for a perpetual tax exemption, the proposed claims will fare no better than their predecessors. The amendment would therefore be futile." We find no error in that ruling.

## G. REQUEST FOR CLASS CERTIFICATION

Because we conclude that defendants are entitled to summary disposition regarding plaintiff's first amended complaint, and that the trial court properly denied his motion for leave to file a second amended complaint, the question of whether class certification was proper is rendered moot. See *Anglers of AuSable, Inc v Dept of Envtl Quality*, 489 Mich 884 (2011) (noting that a case is moot if "it presents 'nothing but abstract questions of law, which do not rest upon existing facts or rights.' "), quoting *Gildemeister v Lindsay*, 212 Mich 299, 302; 180 NW 633 (1920). Hence, we decline to address the class certification issue. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) ("We generally do not address moot questions or declare legal principles that have no practical effect in a case.").

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder