# STATE OF MICHIGAN

# COURT OF APPEALS

---

LYNN GOLDBERG,

        Plaintiff/Counter-Defendant-
        Appellee,

v

10034 HUNTINGTON WOODS INVESTMENT,
LLC, and ANDREW KATTULA,

        Defendants/Counter-Plaintiffs-
        Appellees,
and

JOHN D. HERTZBERG, HERTZBERG PLLC,
and HERTZBERG PC,

        Appellants.

UNPUBLISHED
August 9, 2018

No. 337109
Oakland Circuit Court
LC No. 2015-148781-CK

---

JOHN D. HERTZBERG, JAMESON BEN ONE
LLC, HERTZBERG PLLC, and HERTZBERG
PC,

        Plaintiffs-Appellants,

v

LYNN GOLDBERG, ANDREW KATTULA,
10034 HUNTINGTON WOODS INVESTMENT
LLC, and J & J SPRING ENTERPRISES LLC,

        Defendant-Appellees.

No. 339445
Oakland Circuit Court
LC No. 2017-156977-CK

---

Before: RIORDAN, P.J., and K. F. KELLY and BOONSTRA, JJ.

PER CURIAM.

-1-

In Docket No. 337109, John D. Hertzberg, Hertzberg PLLC and Hertzberg PC (collectively, "Hertzberg"), appeal by right a final consent order that disposed of the claims between plaintiff Lynn Goldberg ("Goldberg") and defendants 10034 Huntington Woods Investment LLC ("HWI") and Andrew Kattula ("Kattula"). Goldberg had sued Kattula and HWI to enforce an option to purchase real property. Hertzberg challenges the order denying his motion to intervene in that action.

In Docket No. 339445, John D. Hertzberg, Jameson Ben One LLC (JBO), Hertzberg PLLC, and Hertzberg PC (again, collectively "Hertzberg"), appeal by right an order that granted summary disposition in favor of Goldberg, as well as an order that granted summary disposition in favor of Kattula, HWI, and J & J Spring Enterprises LLC (collectively "Kattula"), on Hertzberg's complaint seeking, *inter alia*, specific performance of an alleged "designation agreement" wherein Goldberg allegedly designated her option to purchase to one of Hertzberg's entities.

The appeal is "closed" with respect to Goldberg in light of her pending bankruptcy, *Lynn Goldberg v 10034 Huntington Woods Investment LLC*, unpublished order of the Court of Appeals, entered March 14, 2018 (Docket No. 337109).

## I. BASIC FACTS AND PROCEDURAL HISTORY

At issue in this consolidated appeal is a home located at 10034 Lincoln, Huntington Woods, Michigan. Hertzberg, an attorney, was awarded the home following a contentious divorce in Oakland County Circuit Court. Thereafter, Hertzberg defaulted on the mortgage obligation and faced foreclosure. October 2, 2013, Hertzberg arranged a short sale of the home to HWI, a company he created and later transferred to Kattula, who was the son of Hertzberg's friend and client, Robert Kattula ("Robert"). At the time of the short sale, Hertzberg was in a romantic relationship with Goldberg. It appears that Goldberg borrowed $252,000 from Hertzberg and his mother and then turned around and "loaned" that amount to Kattula. Kattula used $5,000 of his own money and borrowed an additional $200,000 from Fifth Third Bank. Kattula purchased the home with $456,000. By Hertzberg's own admission, the home is now valued over $700,000.

Contemporaneous with the short sale, Hertzberg arranged a 10-year Lease Agreement with an Option to Purchase wherein Goldberg agreed with Kattula to pay monthly rent with the option to purchase the property. Hertzberg was not a party to the Lease Agreement, but acted as Goldberg's attorney. In executing the short sale, Hertzberg averred that it was an arm's-length transaction and that he did not intend to stay in the property. However, Hertzberg was romantically involved with Goldberg, and clearly continued to reside in the home with Goldberg after the short sale.

Kattula and Hertzberg later arranged to have the property transferred from HWI to Kattula, individually. After the transfer, Kattula secured a loan against the property. He gave Hertzberg $80,000 of the loan proceeds. Kattula claimed it was a loan to Hertzberg whereas Herzberg claimed it was for legal services rendered to Robert. It appears that Hertzberg and Robert had a personal falling out. In June 2015, contemporaneous with the falling out, Hertzberg advised Kattula that Goldberg was exercising her option to purchase. Goldberg and Hertzberg

were no longer living together at the time but were still friends and Goldberg cooperated with Hertzberg in pursuing the option. The subsequent dispute resulted in *Goldberg v 10034 Huntington Woods Investment, LLC* (OCCC 15-148781-CK) before Judge Hala Jarbou. After protracted proceedings and nearing the time of trial, Goldberg and Kattula entered into a Settlement Agreement dated November 30, 2016. The Settlement Agreement, which Hertzberg drafted, allowed Goldberg, or her designee, to purchase the property from Kattula by January 31, 2017. Goldberg did not purchase the property by that date. Hertzberg unsuccessfully sought to intervene in that case, arguing that he and Goldberg had verbally agreed that Hertzberg's business, JBO, would be Goldberg's designee under the Settlement Agreement. He alleged that Goldberg found out that Hertzberg was residing in the home with his ex-wife and became "the woman scorned" and refused to consummate the agreement. Following the order denying Hertzberg's motion to intervene, Goldberg and Kattula entered into a Stipulated Order of Dismissal on February 1, 2017. Judge Jarbou signed the Stipulated Order to Dismiss and the house was placed for sale with the proceeds to be divided between Goldberg and Kattula.

On the same day that Hertzberg sought to intervene in the above case, he filed a separate action, individually and on behalf of his corporate entities, against Goldberg and Kattula in *Hertzberg v Goldberg*, LLC (OCCC 17-156977-CK). Hertzberg sought specific performance of the alleged verbal designation agreement. In separate orders, Judge Bowman granted summary disposition in favor of both Goldberg and Kattula, finding no admissible evidence indicating that a designation agreement existed.

## II. DOCKET NO. 337109

### A. HERTZBERG'S DUE PROCESS RIGHTS

Hertzberg argues that he was denied due process. This Court reviews de novo constitutional questions, including whether a party was afforded due process. *Brooks Williamson & Assoc, Inc v Mayflower Const Co*, 308 Mich App 18, 32; 863 NW2d 333 (2014).

Our Supreme Court has explained:

[A]nalysis of substantive and procedural due process involves two separate legal tests. While the touchstone of due process, generally, is protection of the individual against arbitrary action of government, the substantive component protects against the arbitrary exercise of governmental power, whereas the procedural component is fittingly aimed at ensuring constitutionally sufficient procedures for the protection of life, liberty, and property interests. [*Bonner v City of Brighton*, 495 Mich 209, 223–224; 848 NW2d 380 (2014) (footnotes and quotation marks omitted).]

Procedural due process generally requires notice and an opportunity to be heard before an impartial trier of fact. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 213; 761 NW2d 293 (2008).

Hertzberg cites the barest law regarding due process and then simply declares that he was deprived of both procedural and substantive due process, citing Judge Jarbou's orders. We would be justified in declining to address the issue as inadequately briefed. See *Mitcham v City*

*of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). In any event, Hertzberg was not denied procedural or substantive due process. As shown from the extensive history between these parties, Hertzberg had multiple opportunities to present his arguments in a variety of forums. He filed a motion to intervene before Judge Jarbou and filed an entirely new case before Judge Bowman. And, although we do not have the entire record from the district court, it can be safely assumed that Hertzberg made similar arguments during an eviction proceeding before 45th District Court Judge Friedman-Appel, who ultimately ordered his eviction.

Hertzberg was not denied due process simply because he was unsuccessful in pursuing his claims. It is obvious that Hertzberg was afforded procedural due process, having had notice and an opportunity to be heard before more than one impartial decision-maker. "The opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004). And, as discussed more fully below, nothing in the February 1st consent order impaired any of his rights or obligations under the Settlement Agreement. "To have a protected property interest, one must possess more than a unilateral expectation to the claimed interest; the claimant must have a legitimate claim of entitlement." *York v Civil Serv Comm'n*, 263 Mich App 694, 702–703; 689 NW2d 533 (2004).

## B. VALIDITY OF THE GOLDBERG-KATTULA CONSENT ORDER

Hertzberg argues that the Consent Order was void because he did not consent to it and parties to a consent action cannot bind non-parties. Whether the Consent Order is void as applied to Hertzberg appears to be a question of law that is reviewed de novo. *Kessler v Kessler*, 295 Mich App 54, 57; 811 NW2d 39 (2011).

Hertzberg cites MCR 3.310(C)(4), which provides that an order granting an injunction or restraining order is "binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." However, Hertzberg makes no attempt to discuss how MCR 3.310(C)(4), which applies to injunctions, is applicable to the case at bar. As such, his argument is deemed abandoned as inadequately briefed. *Mitcham*, 355 Mich at 203.

In any event, as Kattula notes, Hertzberg did not move out of the home as a result of the Consent Order, but as a result of District Court Judge Friedman-Appel's eviction order and the issue is moot. Our Supreme Court recently confirmed that:

> "[A]s a general rule, this Court will not entertain moot issues or decide moot cases." *East Grand Rapids Sch Dist v Kent Co Tax Allocation Bd*, 415 Mich 381, 390, 330 NW2d 7 (1982). A moot case presents "nothing but abstract questions of law which do not rest upon existing facts or rights." *Gildemeister v Lindsay*, 212 Mich 299, 302, 180 NW 633 (1920). It involves a case in which a judgment "cannot have any practical legal effect upon a then existing controversy." *Anway v Grand Rapids R Co*, 211 Mich 592, 610, 179 NW 350 (1920) (quotation marks and citation omitted). [*TM v MZ*, ___ Mich ___; ___ NW2d ___ (Docket No. 155398), slip op, p 3.]

-4-

Judge Friedman-Appel ordered Hertzberg evicted on March 13, 2017. Hertzberg appealed the eviction to the circuit court, but Judge Bowman dismissed the appeal as moot because Hertzberg no longer resided in the property. Although Hertzberg claims that the Consent Order impaired his rights, it is obvious that the Consent Order was not the cause of the eviction.

Hertzberg next claims that the Consent Order could not be used as a device by which Goldberg and Kattula could take away Hertzberg's right as a non-party. Hertzberg cites federal case law that a non-party's rights cannot be impaired by a consent agreement and that he was entitled to his own day in court. But the fact remains that Herzberg moved out of the property as a result of Judge Friedman-Appel's eviction order and that he ignored the release provision by filing a separate action before Judge Bowman. Quite simply, the Consent Order had no impact on Hertzberg and, therefore, did nothing to impair his rights or obligations, if any, under the Settlement Agreement. As discussed more fully below, there is a total absence of any admissible evidence that a designation agreement even existed.

Hertzberg argues at length that Judge Jarbou, as a circuit court judge, lacked jurisdiction to order an eviction under the Consent Order because eviction is within the exclusive jurisdiction of the district court. However, as previously noted, Hertzberg did not move out of the property as a result of Judge Jarbou's Consent Order; he moved out as a result of Judge Friedman-Appel's eviction order. Therefore, any discussion regarding competing jurisdiction would be superfluous.

## C. RIGHT TO INTERVENE

Hertzberg argues that he had the right to intervene under MCR 2.209(A)(3) or, alternatively, should have been granted permissive intervention under MCR 2.209(B)(2). "A trial court's decision on a motion to intervene is reviewed for an abuse of discretion." *State Treasurer v Bences*, 318 Mich App 146, 149; 896 NW2d 93 (2016).

Our Court recently confirmed that: "The rule for intervention should be liberally construed to allow intervention where the applicant's interests may be inadequately represented. Nevertheless, intervention may not be proper where it will have the effect of delaying the action or producing a multifariousness of parties and causes of action." *State Treasurer v Bences*, 318 Mich App 146, 150; 896 NW2d 93 (2016), quoting *Hill v LF Transp, Inc*, 277 Mich App 500, 507; 746 NW2d 118 (2008) (citations and quotation marks omitted).

The first relevant inquiry is whether Hertzberg even has an enforceable interest in the property. He maintains that the Settlement Agreement itself was sufficient to entitle him, as Goldberg's designee, to purchase the property and was sufficient for satisfying the statute of frauds. "The statute of frauds was designed to prevent disputes as to what the oral contract, sought to be enforced, was." *In re Rudell Estate,* 286 Mich App 391, 407; 780 NW2d 884 (2009) (quotation omitted). "In Michigan, the sale of land is controlled by the statute of frauds. The statute of frauds, in regards to the sale of land, is comprised of MCL 566.106 and MCL 566.108." *Lakeside Oakland Dev, LC v H & J Beef Co,* 249 Mich App 517, 524; 644 NW2d 765 (2002) (citation omitted). MCL 566.106 provides:

No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

And MCL 566.108 provides:

Every contract . . .for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the . . .sale is to be made, or by some person thereunto by him lawfully authorized in writing . . .

"Simply put, therefore, a contract for the sale of land must, to survive a challenge under the statute of frauds, (1) be in writing and (2) be signed by the seller or someone lawfully authorized by the seller in writing." *Zurcher v Herveat,* 238 Mich App 267, 277; 605 NW2d 329 (1999).

Hertzberg believes that parol evidence is admissible to clarify, not vary, the terms of the Settlement Agreement. The parole evidence is well settled:

The parol evidence rule may be summarized as follows: parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous. This rule recognizes that in back of nearly every written instrument lies a parol agreement, merged therein. The practical justification for the rule lies in the stability that it gives to written contracts; for otherwise either party might avoid his obligation by testifying that a contemporaneous oral agreement released him from the duties that he had simultaneously assumed in writing. In other words, the parol evidence rule addresses the fact that disappointed parties will have a great incentive to describe circumstances in ways that escape the explicit terms of their contracts.

However, parol evidence of prior or contemporaneous agreements or negotiations is admissible on the threshold question whether a written contract is an integrated instrument that is a complete expression of the parties' agreement. [There are] four exceptions to the parol evidence rule, [where] extrinsic evidence is admissible to show (1) that the writing was a sham, not intended to create legal relations, (2) that the contract has no efficacy or effect because of fraud, illegality, or mistake, (3) that the parties did not integrate their agreement or assent to it as the final embodiment of their understanding, or (4) that the agreement was only partially integrated because essential elements were not reduced to writing. [*UAW-GM Human Res Ctr v KSL Recreation Corp*, 228 Mich App 486, 492–493; 579 NW2d 411 (1998) (quotation marks and citations omitted.]

Hertzberg seems to rely on the third and fourth exceptions. He cites *Randazzo v Kroenke*, 373 Mich 61; 127 NW2d 880 (1964) in support of his position that the Settlement Agreement did not

need to specifically name Goldberg's designee to be valid and that parol evidence could be used to establish that all parties to the Settlement Agreement were expressly aware of, and expressly consented to the designation of a Hertzberg entity as purchaser.

In *Randazzo*, a purchaser sought specific performance of a real estate deal. The seller argued that the purchase agreement was invalid because it did not include the name of the purchaser; it only included the amount and date of sale. In short, the seller argued that the contract was missing material terms and was, therefore, unenforceable. The purchaser sought to admit other written instruments to clarify the parties' agreement. The *Randazzo* Court quoted 49 Am Jur, Statute of Frauds, § 394, p. 699:

> "Separate writings which are related in subject matter may be read together to satisfy the requirement of the statute for a memorandum not only where both are signed by the party to be charged, but also where only one of them is signed, if they are so connected that the signature appearing upon the one can be said to authenticate the other one which is unsigned. Under such circumstances it is deemed that there is in fact a reference in the one instrument to the other, or, as some authorities declare, the reference required to incorporate the other paper in the memorandum is implied, or, as otherwise stated, there is an incorporation by necessary inference. . . ."

> In conformity with the foregoing, plaintiff should have the opportunity of presenting evidence, if any there be, which could bring the separate writings within the purview of the foregoing rule. [*Randazzo v Kroenke*, 373 Mich 61, 67; 127 NW2d 880 (1964).]

*Randazzo* establishes that extrinsic evidence may be used to supplement, but not contradict, the terms of the written agreement. In effect it liberalizes the previously strict interpretation of the statute of frauds. However, the *Randazzo* case is not on point. As Kattula points out, Hertzberg does not seek to supplement the Settlement Agreement with other written instruments; instead, he seeks to supplement the Settlement Agreement with evidence of an alleged *oral* contract. The extrinsic evidence upon which Hertzberg relies is inadmissible. As set forth more fully below, the affidavits of Hertzberg and Attorney Michael Zousmer ("Zousmer) were inadmissible because they disclosed client confidences. Additionally, at the time Hertzberg sought to intervene, Zousmer had not filed his affidavit.

After arguing that *Randazzo* is on point – a case which involved a request for specific performance of a real estate sale – Hertzberg claims that the designation did not involve real estate at all and was, instead, an option to purchase an intangible contract right, which could be performed in less than a year. This position is inconsistent with Hertzberg's ultimate request – specific performance of the Settlement Agreement requiring Kattula to sell the property to JBO as designee.

Hertzberg also claims that the agreement was removed from the statute of frauds due to partial performance. Under the doctrine of part performance, "[i]f one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute, equity will

regard the contract as removed from the operation of the statute." *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 540; 473 NW2d 652 (1991) (quotation omitted). Here, Hertzberg's "part performance" was not so prejudicial to justify removing the oral agreement from the statute of frauds. Hertzberg merely prepared to close by seeking financing and was not encumbered in any way. Moreover, as discussed below, Hertzberg violated MRPC 1.8 by entering into a business transaction with a client. Thus, to the extent there was an agreement (and the evidence demonstrates otherwise), the agreement would have been unenforceable.

In light of the fact that Judge Jarbou did not abuse her discretion in denying Hertzberg's motion to intervene, it follows that she did not abuse her discretion in denying Hertzberg's motions for reconsideration and for stay.

### III. DOCKET NO. 339445

Hertzberg argues that Judge Bowman erred when he granted Kattula and Goldberg summary disposition. Because the appeal as to Goldberg has been stayed because of her bankruptcy proceeding, we address only those issues relating to Kattula.

An appellate court reviews de novo the trial court's decision to grant or deny a motion for summary disposition. *Adair v State*, 470 Mich 105, 119; 680 NW2d 386 (2004). "MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. The court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted or filed in the action to determine whether a genuine issue of any material fact exists to warrant a trial." *Id*. at 337. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "The court is not permitted to assess credibility, or to determine facts on a motion for summary judgment." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

In his motion for summary disposition, Kattula argued that there was no enforceable agreement to designate or sell the designation rights at the time of facilitation. Kattula pointed to certain provisions in Hertzberg's amended complaint in which Hertzberg alleged that he and Goldberg made an express agreement that JBO would buy the property *prior to* facilitation. Yet the alleged agreement was absent from the terms of the Settlement Agreement. Had an agreement been made to designate JBO prior to or during facilitation, such an agreement would have surely been reduced to writing. Kattula relied on Hertzberg's allegations and on Goldberg's affidavit wherein she denied that she ever designated a Hertzberg entity under the Settlement Agreement.

In response, Hertzberg referenced his own affidavit, as well as that of Goldberg's former attorney, Michael Zousmer. Zousmer averred that he was at the facilitation and that everyone understood that JBO would be Goldberg's designee. In granting Kattula's motion for summary disposition, Judge Bowman concluded:

> Viewing the evidence in the light most favorable to the non-moving party, the Court finds that there is no genuine issue of material fact. The crux of the Kattula Defendants' argument is that Goldberg never selected JBO as her

designee for the purchase of the Property and that such designation is invalid because it was not incorporated into the settlement agreement. The Kattula Defendants rely on the language of the settlement agreement and Goldberg's affidavit. In response, plaintiffs direct this Court's attention to the affidavits of Mr. Hertzberg (who apparently represented Goldberg during the settlement negotiations as well as other disputes) and Attorney Zousmer (who represented Goldberg in the Prior Litigation and during the settlement negotiations). In these affidavits, this Court finds that Mr. Hertzberg and Attorney Zousmer are disclosing client confidences without a waiver from their former client. As such, this Court finds that these affidavits are not admissible evidence as presented. As such, this Court finds that there is no genuine issue of material fact regarding whether Goldberg selected JBO as her designee and whether JBO is essentially Mr. Hertzberg. Summary disposition pursuant to MCR 2.116(C)(l0) is, therefore, appropriate.

Hertzberg argues that Judge Bowman's comment that the Hertzberg and Zousmer affidavits were "client confidences" was something that Judge Bowman picked out of thin air and that the issue was never raised or addressed in the motion for summary disposition. However, it is important to note that the affidavits were submitted in response to Kattula's motion for summary disposition and Kattula had no reason to discuss what was never raised. Instead, Judge Bowman did exactly as he was required to do under a motion for summary disposition by considering the affidavits, pleadings, depositions, admissions, and other documentary evidence to determine whether a genuine issue of any material fact exists to warrant a trial.

Judge Bowman concluded that the affidavits were inadmissible because they disclosed a client confidence under MRPC 1.6. Hertzberg argues that neither he nor Zousmer acted as Goldberg's attorney during facilitation. However, the signature page of the Facilitation Brief contains a footnote: "Mr. Hertzberg and Mr. Zousmer are Plaintiff's counsel, solely, for purposes of the facilitation." The facilitation brief clearly provides that both Hertzberg and Zousmer acted as Goldberg's attorney during facilitation. Moreover, Hertzberg's affidavit clearly sets forth that Zousmer was Goldberg's attorney during facilitation. Hertzberg continuously argues that Goldberg was represented by Attorney Michael Curhan, who was also present during facilitation. However, in a subsequent motion to withdraw as counsel, Curhan wrote: "Prior to counsel filing his appearance, [Goldberg] was represented throughout this litigation by her prior counsel who she is still in contact with and, based upon information and belief, who is still providing her with legal advice and services."

Both Hertzberg and Zousmer represented Goldberg during the facilitation process. And, even if Hertzberg did not act as her attorney at facilitation, he was her attorney in other matters. There is nothing in the rule that requires that the client confidence be made regarding a specific event; instead, the rule simply prohibits disseminating confidential information gained from a professional relationship. Hertzberg clearly had a professional relationship with Goldberg, as evidenced by emails and other documentary evidence in which he acted as her attorney in other matters during the same time period as the facilitation. Given that Goldberg denied designating a Hertzberg entity under the Settlement Agreement, Hertzberg's attempt to prove the contrary by

disclosing alleged communication is the precise situation the rule seeks to prevent. Judge Bowman properly concluded that the affidavits could not be considered.

Hertzberg argues that Judge Bowman erred because he made impermissible credibility determinations. Having appropriately determined that he could not consider the affidavits, Judge Bowman properly concluded that Hertzberg failed to bring forth any admissible evidence that would raise a genuine fact for trial. When denying Hertzberg's motion for reconsideration, Judge Bowman noted:

> Having reviewed the motion, this Court finds that plaintiffs failed to demonstrate a palpable error and merely presents the same issues as previously ruled upon by the Court, either expressly or by reasonable implication, based on the evidence before the court at the time it issued its opinion. Contrary to plaintiffs' position, this Court does not find that it engaged in impermissible fact finding or weighed the credibility of the evidence. Specifically, this Court found – as a matter of law –that there was no genuine issue of material fact that (1) Hertzberg attended the settlement negotiations between Goldberg and the Kattula Defendants; (2) Hertzberg and Zousmer filed documentation related to the settlement negotiations that expressly stated that they represented Goldberg for these negotiations; (3) Hertzberg did not appear to be a party in the case so his reasons to attend and draft the settlement agreement were limited; (4) Hertzberg acknowledged that he drafted the settlement agreement; and ( 5) there is no documentation to demonstrate who Goldberg selected to exercise her purchase option. As such, this Court found – as a matter of law – that Hertzberg represented Goldberg during the settlement agreement and his (and Zousmer's) affidavit(s) were merely an attempt to refute their prior acknowledgements that they represented Goldberg at the time of the settlement negotiations.

Contrary to Hertzberg's arguments, Judge Bowman did not simply believe one party's *argument* over the other; instead, Judge Bowman considered the evidence before him and determined that no issue of fact remained for trial.

To the extent Hertzberg argues that parol evidence was admissible because the Settlement Agreement was not fully integrated, etc., the argument need not be addressed because, even if that was true, Hertzberg brings forth no *admissible evidence* that Goldberg designated a Hertzberg entity under the Settlement Agreement.

## IV. SANCTIONS

Finally, we note that although there has been no separate motion for sanctions, Kattula's responsive briefs request that Hertzberg be sanctioned for bringing a vexatious appeal. This request is well received under the circumstances. MCR 7.216(C)(1) provides:

> The Court of Appeals may, on its own initiative or on the motion of any party filed under MCR 7.211(C)(8), assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because

(a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal; or

(b) a pleading, motion, argument, brief, document, or record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court.

On our own initiative, we conclude that Hertzberg's appeals are vexatious. After a thorough review of the records in each case, we have determined that Hertzberg, an attorney, plays fast and loose with the facts and the law. Accordingly, we remand to the trial court to determine the amount of attorney fees to be awarded.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Kattula may tax costs. MCR 7.219.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra